788 F.2d 450
 40 Fair Empl.Prac.Cas. 963,
39 Empl. Prac. Dec. P 36,077
James F. GLASS, Plaintiff-Appellant,
v.
ROCK ISLAND REFINING CORP. and the Oil, Chemical & Atomic
Workers International Union, Local 7-535,
Defendants-Appellees.
 No. 85-1219.
 United States Court of Appeals,
Seventh Circuit.
 Submitted Jan. 14, 1986.
Decided April 14, 1986.
 
 Kathleen A. Dayson, Kenneth T. Roberts & Assoc., Indianapolis, Ind., for plaintiff-appellant.
 David N. Shane, Baker & Daniels, Roberta Sabin Recker, Indianapolis, Ind., for defendants-appellees.
 Before CUDAHY, COFFEY and FLAUM, Circuit Judges.
 COFFEY, Circuit Judge.
 
 
 1
 The plaintiff, James F. Glass ("Glass"), appeals from an order of the district court finding that he knowingly and intelligently waived his Title VII claims against the defendant, Rock Island Refining Corp. ("Rock Island"), and dismissing his complaint with prejudice. We affirm.
 
 
 2
 * In December 1979, Glass filed a complaint in the United States District Court for the Northern District of Indiana alleging, inter alia, that Rock Island Refining Corp. discriminated against him because of race in violation of 42 U.S.C. Sec. 2000e (Title VII) in discharging him from his employment in April 1979. The plaintiff sought reinstatement in his former job with Rock Island, an award of backpay, compensatory and punitive damages, and attorneys' fees. When the defendant filed its answer to the complaint, it also filed a third-party complaint against Stuart Bench, Glass' attorney, alleging the plaintiff's complaint to be unreasonable, frivolous, vexatious and thus justified an award of attorneys' fees and costs against Bench. Not long thereafter, in May 1980, Rock Island voluntarily dismissed its third-party complaint against Bench without prejudice pursuant to Fed.R.Civ.P. 41(a). Following two years of pre-trial litigation, the court set a trial date of May 13, 1982 to try the only issue remaining in the plaintiff-appellant Glass' case--whether Rock Island violated Title VII in discharging him because of race.
 
 
 3
 Attorney Bench and counsel for the defendant met with the district judge in his chambers on the morning of May 13 in a final effort to reach a settlement before trial. The official reporter's transcript of the settlement proceedings reveals that the district judge suggested a possible settlement amount of $3,000 and after a brief discussion between Bench and the district judge, Bench agreed to talk to Glass "one more time" to give him an opportunity to accept a $3,000 settlement. After the settlement conference recessed, Attorney Bench was given an opportunity to discuss the proposed settlement with his client. When the settlement conference reconvened in the judge's chambers some twenty minutes later, Bench reported, "we will take the 3,000.... He [Glass] is reluctant, but he will take it. He would like some more money, to be honest with you. 'See if you can get five,' is what he told me." The judge stated that he would call Glass' case in open court and ask the plaintiff on the record if he were settling his case, but would not ask him the amount of the settlement. The settlement conference adjourned and shortly thereafter the court called Glass' case for trial in open court, at which time the following exchange occurred:
 
 
 4
 "THE COURT: The Court discussed the settlement aspects of this case also with counsel, and the court has been informed that a figure has been reached which would result in the plaintiff signing certain releases and that that will take some time for preparation and presentation, and when the court is so notified that the releases have been effected, that this case will then be dismissed as settled.
 
 
 5
 Is that a fair resume of the situation at this time, Mr. Bench?
 
 
 6
 MR. BENCH: Yes, it is, Your Honor. We have reached an agreement.
 
 
 7
 THE COURT: Is that a fair representation of the situation, Mr. Shane?
 
 
 8
 MR. SHANE: Yes, Your Honor, it is.
 
 
 9
 THE COURT: All right. The Court now addresses the plaintiff in this case, Mr. James F. Glass. Mr. Glass, you are here with your attorney. Are you settling your case on the basis of Mr. Bench's discussion with you?
 
 
 10
 MR. GLASS: Yes, I am.
 
 
 11
 THE COURT: All right. The Court now considers that a contract has been executed between the parties, that the releases on every matter transpiring up to this date will be executed and this case will then be handled in the fashion just described by the Court."
 
 
 12
 On the next day, Bench received a release prepared by Rock Island counsel for Glass to sign providing for a $3,000 payment to Glass in consideration of his agreement: (1) to pay Bench's attorney fee and all court costs out of the $3,000 payment; (2) not to seek reinstatement or future employment with Rock Island; and (3) to stipulate to a dismissal of his action against Rock Island with prejudice. After unsuccessfully attempting to contact Glass by telephone, Bench sent him a letter dated May 24, 1982 requesting that he sign the release. Glass responded to Bench's May 24 letter in writing on May 28 stating that the terms set forth in the release were not the terms he agreed to, and stating, "The figure quoted to me [on May 13] was not $3,000 as you stated in your letter of May 24, 1982. I was offered over $10,000 over a year ago; I did not accept it. Why should I settle for $3,000 now?" Glass sent copies of this letter to the district judge and counsel for Rock Island. The plaintiff Glass sent a second letter again rejecting the $3,000 settlement to Attorney Bench on June 25, again sending copies to the district judge and Rock Island's counsel.
 
 
 13
 On August 4, 1982 Rock Island filed a petition in the district court to confirm the settlement and dismiss Glass' action with prejudice, and on the same day the district court entered an order finding that the settlement was final on May 13, confirming the settlement and dismissing the plaintiff's claim. Glass appealed and the Seventh Circuit reversed and remanded to the district court for a full evidentiary hearing, concluding that the record failed to demonstrate that the plaintiff knowingly and voluntarily consented to the settlement of his Title VII claim, and thus failed to satisfy the requirements of Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), that an employee's consent to settle a Title VII claim be voluntary and knowing. On remand, the district court heard testimony from Attorney Bench (who withdrew as Glass' counsel following his refusal to execute the release) and Glass.
 
 
 14
 At the evidentiary hearing, Bench testified that following the initial conference on the morning of May 13, 1982 with counsel for Rock Island and the district judge he met with Glass in the hallway outside the courtroom and explained the settlement terms offered by Rock Island: (1) a $3,000 cash payment to Glass; (2) Glass would not be reinstated to his former position at Rock Island; (3) Rock Island would provide Glass with a neutral letter of reference; (4) Rock Island would "purge" Glass' file so that future employers would not have access to derogatory information concerning him in Rock Island's files; (5) Rock Island would not seek court costs or attorneys' fees from Glass; (6) Rock Island would permit Glass to resign rather than be fired; and (7) Glass would release all of his claims against Rock Island. Attorney Bench also discussed with his client (Glass) the improbabilities of success in his case against Rock Island and explained that if the defendant prevailed at trial, it (Rock Island) might be entitled to recover fees and costs of at least $7,500 from Glass. Bench stated he then went over all of the terms of the settlement agreement with his client for a second time. Bench recounted that Glass acknowledged that he would not receive the entire $3,000 because his fee contract with Bench provided that Bench would receive one-third of a settlement plus his out-of-pocket expenses. Bench further related that he advised Glass that he would reduce his fee to $750.00 and no expenses, and wrote the calculation out on a legal pad ($3,000 minus $750 equals $2,250) in order to demonstrate to Glass how he came up with the cash figure. According to Bench, Glass asked him how long it would be before he would receive the cash settlement and Bench replied that it would be a week or two. Bench further testified that in his discussions with Glass on May 13, he never mentioned a figure other than $3,000 as the cash value of the settlement nor did he ever represent that reinstatement to his former job would be included in the settlement agreement and stipulation to dismiss. Attorney Bench related that after his conversation with Glass in the corridor, he returned to the judge's chambers and informed the judge and Rock Island's counsel that "we had an agreement as to the $3,000 and the other terms." Bench recited that after the judge informed him that he was going to make the settlement a part of the record in open court, he returned to the hallway to talk with his client and explained the terms of the settlement to Glass for a third time, specifically reciting the $3,000 cash maximum amount of money to be paid in settlement. According to Bench, Glass stated that he understood each of the conditions of the settlement and agreed to them. At this time, Bench testified, he explained that if Glass had any questions about the settlement he should ask them now because once the court accepted the settlement and made it part of the record, the settlement would become a binding contract and he (Glass) would thus be bound by it. Glass asked no further questions and proceeded into the courtroom and accepted the settlement offer on the record. As they were leaving the courthouse, Glass again asked Attorney Bench "about the $3,000 and when it would be received," specifically identifying the settlement amount as $3,000. According to Bench, the plaintiff on May 13 never expressed any disagreement over the settlement terms, and Glass first expressed his disagreement after the May 13 court appearance at the time he telephoned Attorney Bench upon receiving Bench's letter of May 24 requesting that he sign the settlement documents. Bench testified that in this telephone conversation following the May 24 letter, Glass admitted to Bench that "he had agreed to the $3,000, but ... $3,000 was not enough."
 
 
 15
 Glass, testifying at the hearing, contradicted Attorney Bench's testimony, stating that when Bench first came out into the hallway from the settlement conference on May 13, 1982, he told his attorney that $3,000 was not enough, that he desired to be reinstated in his old job, and that he wanted to go to trial if he couldn't get reinstated. Glass claimed that when Attorney Bench returned to the hallway after conferring with Rock Island counsel and the judge for the second time, Bench told him that he would be reinstated and further receive an unspecified award of backpay. According to Glass, Bench told him before they went into court to put the settlement on the record that if he was asked by the court, he should say that he agreed to settle the case. Glass further testified that he first learned of the actual terms of the purported agreement when he called Bench after not having heard from Bench for approximately two weeks following the May 13 settlement conference.
 
 
 16
 Despite contradicting some of Bench's testimony during his direct examination, Glass did admit on cross-examination that the only figure quoted to him on May 13 was $3,000 and that no amount was specified as payment for the backpay to which Glass had purportedly agreed. On appeal Glass maintained that the settlement terms explained to him on May 13 included reinstatement and an award of backpay. On the other hand, Attorney Bench testified that he advised Glass that the settlement offer was $3,000 cash and no reinstatement.
 
 
 17
 Following the evidentiary hearing, the district court issued an order stating:
 
 
 18
 "Having heard the testimony of the two witnesses concerning the settlement negotiations of this case, and finding that the witnesses contradict each other on certain points, the Court must consider the credibility of the witnesses. Based on the Court's observance of the witnesses' demeanor, Glass' self-interest in the outcome of the hearing, and Bench's interest in receiving $750 in attorney's fees, the Court finds that Bench's testimony is more credible than Glass' testimony.
 
 
 19
 The Court finds that although Glass may not have been happy with the terms, he knowingly and voluntarily waived his claims against Rock Island, including his Title VII claim, in accordance with the previously described terms.... The Court bases its finding primarily on Bench's testimony at the evidentiary hearing, as described above."
 
 
 20
 The district court confirmed the settlement and adopted its previous order enforcing the settlement and dismissing Glass' action. Glass appealed from this order dismissing his claim, contending that: (1) he did not voluntarily and knowingly settle his claim against Rock Island as he believed he was accepting a settlement far different from the terms embodied in the settlement documents prepared by Rock Island; (2) Attorney Bench could not effectively negotiate for Glass once Bench became a third-party defendant; and (3) that the district court abused its discretion at the evidentiary hearing on remand in failing to inquire into the trial readiness of Attorney Bench on May 13, apparently on the grounds that if Bench was not prepared, he would be more likely to pressure Glass to accept the settlement terms rather than go to trial.
 
 II
 
 21
 A plaintiff "may waive his cause of action under Title VII as part of a voluntary settlement," Alexander v. Gardner-Denver Co., 415 U.S. 36, 52, 94 S.Ct. 1011, 1021, 39 L.Ed.2d 147 (1974), but "[i]n determining the effectiveness of any such waiver, a court would have to determine at the outset that the employee's consent to the settlement was voluntary and knowing." Id. at 52 n. 15, 94 S.Ct. at 1021 n. 15; see also Lyles v. Commercial Lovelace Motor Freight, Inc., 684 F.2d 501, 504 (7th Cir.1982); Fulgence v. J. Ray McDermott & Co., 662 F.2d 1207, 1209 (5th Cir.1981). "Federal law does not require ... that the settlement be reduced to writing. Absent a factual basis rendering it invalid, an oral agreement to settle a Title VII claim is enforceable against a plaintiff who knowingly and voluntarily agreed to the terms of the settlement or authorized his attorney to settle the dispute." Fulgence, 662 F.2d at 1209; see also Lyles, 684 F.2d at 504. A party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement insufficient--"If a party to a Title VII suit who has previously authorized a settlement changes his mind ..., that party remains bound by the terms of the agreement." Worthy v. McKesson Corp., 756 F.2d 1370, 1373 (8th Cir.1985) (quoting Fulgence, 662 F.2d at 1209).
 
 
 22
 Whether a plaintiff knowingly and voluntarily agreed to settle his Title VII claims is a question of fact. See Worthy, 756 F.2d at 1372. Thus, a district court's finding with regard to whether a plaintiff knowingly and voluntarily entered a settlement agreement, "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Fed.R.Civ.P. 52(a); see also Anderson v. City of Bessemer City, --- U.S. ----, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); SEC v. Suter, 732 F.2d 1294, 1300 (7th Cir.1984). In Anderson, the Supreme Court repeated the often recognized standard that "a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Id., 105 S.Ct. at 1511 (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)). The Anderson Court also elaborated on the role of the appellate court in applying the clearly erroneous standard to a district court's finding of fact:
 
 
 23
 "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous....
 
 
 24
 * * *
 
 
 25
 * * *
 
 
 26
 [W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error."
 
 
 27
 Id., 105 S.Ct. at 1512-13; see also Klockner, Inc. v. Federal Wire Mill Corp., 663 F.2d 1370, 1375 (7th Cir.1981).
 
 
 28
 The district court in the present case specifically acknowledged that it found Bench's testimony to be more credible than Glass' testimony and that its finding that Glass voluntarily and knowingly waived his claims against Rock Island was based largely upon Bench's testimony; the Supreme Court in Anderson directed that, as in this case, "When findings are based on determinations regarding the credibility of witnesses, Rule 52 demands even greater deference to the trial court's findings." 105 S.Ct. at 1512.
 
 
 29
 Bench's testimony at the evidentiary hearing revealed that on May 13 he explained the terms of the proposed settlement agreement (a $3,000 cash settlement without reinstatement) to his client not once, but three separate times, and Glass agreed to accept $3,000. The testimony of Attorney Bench also established that after Glass accepted the settlement in court, he asked how soon he would receive his $3,000 settlement, and subsequently told Bench that although he agreed to settle for $3,000, $3,000 was not enough money. Bench's testimony thus provides substantial evidence for finding that Glass knowingly and voluntarily accepted $3,000 in settlement of all his claims against Rock Island and that he refused to sign the settlement documents only because he subsequently changed his mind and decided he wanted more money and desired to be reinstated to his position with Rock Island. Bench's testimony was coherent, plausible, internally consistent, and not contradicted by any external evidence. Accordingly, as Bench's testimony provides substantial evidence to support the district court's finding and we are not left with a definite and firm conviction that a mistake has been committed, we hold that the district court's finding that Glass knowingly and voluntarily waived his claims against Rock Island, including his Title VII claim, was not clear error.
 
 
 30
 Glass also claims the district court erred in not disqualifying Bench when he became a third-party defendant to the action since Bench's status as a party to the lawsuit impaired his independent professional judgment and precluded Bench from vigorously negotiating a settlement on behalf of Glass. The record fails to disclose that Glass ever raised the issue of Bench's disqualification at any time in the district court, either during the more than two years between the filing of Rock Island's third-party complaint against Bench and the court's August 4, 1982 order affirming the settlement or during the evidentiary hearing on remand. Thus, Glass has waived his claim that the district court erred in failing to disqualify Bench as "it is a well-established general proposition that 'a litigant cannot present to [the Circuit Court of Appeals] as a ground for reversal an issue which was not presented to the trial court and which it, therefore, had no opportunity to decide.' " United States ex rel. Cole v. Lane, 752 F.2d 1210, 1219 (7th Cir.1985) (quoting Holleman v. Duckworth, 700 F.2d 391, 394-95 (7th Cir.1983)); see also Libertyville Datsun Sales, Inc. v. Nissan Motor Corp., 776 F.2d 735, 737 (7th Cir.1985). Finally, we find no merit in Glass' argument that the district court abused its discretion at the evidentiary hearing in failing to inquire into Attorney Bench's readiness for trial on May 13, 1982 as Glass has failed to provide any case law to support his claim nor has our research discovered any case law imposing an affirmative obligation on the district court to inquire into the preparedness of trial counsel. In addition, our review of the record fails to disclose evidence that the district judge abused his discretion at the evidentiary hearing.
 
 III
 
 31
 The decision of the district court is AFFIRMED.