960 F.2d 147
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Albert L. SHERMAN, Plaintiff-Appellant,
v.
Philip MORRIS, INCORPORATED, Defendant-Appellee.
 No. 91-1017.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 6, 1991
Decided: April 24, 1992
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Robert R. Merhige, Jr., Senior District Judge. (CA-89-790-R)
 Argued: Robert P. Geary, Richmond, Virginia, for Appellant.
 Martin J. Barrington, HUNTON & WILLIAMS, Richmond, Virginia, for Appellee.
 On Brief: Hill B. Wellford, Jr., J. Mark DeBord, HUNTON & WILLIAMS, Richmond, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED IN PART; DISMISSED IN PART
 Before WIDENER, WILKINS, and NIEMEYER, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 This is an appeal from the United States District Court for the Eastern District of Virginia. Sherman, the appellant, contends that the district court erred in denying his motion to set aside a settlement agreement between the parties and in granting Philip Morris' motion to enforce this agreement. We find no error and affirm the judgment of the district court.
 
 
 2
 On December 22, 1989, Albert L. Sherman filed a complaint against his employer, Philip Morris, U.S.A., alleging a deprivation of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The first and second counts of the complaint raised claims of racial discrimination in employment and retaliation based upon the plaintiff's protests concerning such discrimination, while the third count involved an allegation of intentional infliction of emotional distress. On April 24, 1990, the district court dismissed the third count without prejudice. The plaintiff proceeded to trial on the remaining claims on July 14, 1990. During a recess in the course of the proceedings, the parties engaged in settlement discussions with the assistance of the court. As a result, the parties reached an agreement and the district court, on July 17, 1990, entered its order dismissing the case with prejudice.
 
 
 3
 Under the settlement, the defendant agreed to attempt for a sixtyday period to find a suitable position in which it could employ the plaintiff. If such a position were found and accepted by the plaintiff, the defendant was to pay $12,000 to the plaintiff for his attorney's fees and costs, and the plaintiff was to release all claims against the defendant. If, on the other hand, a position were not so found and accepted, the defendant agreed to pay $40,000, for costs, attorney's fees, and compensation, and the plaintiff would resign from the corporation and release all claims. When the defendant sent the written agreement to the plaintiff for his signature and the plaintiff failed to execute it, a series of communications ensued between the parties' attorneys leading to the filing of the defendant's motion to enforce the settlement on August 9, 1990. Over two months later, the plaintiff filed a motion to set aside the agreement. The district court held an evidentiary hearing on these motions on November 2, 1990 and thereafter entered an order enforcing the settlement and awarding the defendant $5,000 in attorney's fees. This appeal followed.
 
 
 4
 The plaintiff advances two arguments in support of his contention that the settlement agreement should be set aside. He first claims that his consent to the agreement was not voluntarily given. If true, this circumstance would run afoul of the requirement that a Title VII plaintiff's consent to a settlement be "voluntary and knowing." Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 n.15 (1974); cf. O'Shea v. Commercial Credit Corp., 930 F.2d 358, 361 (4th Cir. 1991). The district court's determination of whether the plaintiff knowingly and voluntarily agreed to settle is a factual finding that will not be disturbed unless clearly erroneous. Glass v. Rock Island Refining Corp., 788 F.2d 450, 455 (7th Cir. 1986).
 
 
 5
 After reviewing the record, it is at once apparent, and indeed Sherman has admitted in the record, that, during the settlement discussions on July 14, 1991, he received from the court an explanation of "what the terms of the settlement were and how it was going to work." Following this explanation, the court asked the plaintiff if he understood these terms and he replied in the affirmative. Only moments later, the plaintiff plainly stated to the court that he accepted the settlement agreement. From the plaintiff's own testimony, it appears that he was given the opportunity to consult with his attorney, family, friends, and psychologist during the course of the settlement discussions and did so on several occasions. The plaintiff further testified that he is college educated and holds a bachelor's degree. The record reflects that the plaintiff, in person, repeatedly asked questions of the court and opposing counsel before stating, in the presence of his counsel, to the court, that he accepted the settlement terms. The plaintiff does not dispute the basic account of the settlement discussions outlined above, but nevertheless insists that he was coerced into settling by the urgings of the trial court, defendant's counsel, and his own attorney. To the extent that the plaintiff suggests that inadequate representation by his own attorney rendered his consent involuntary, our decision in Petty v. Timken Corporation, 849 F.2d 130, 133 (4th Cir. 1988), stated that such an allegation cannot be used to attack "the integrity of the settlement" and is a "dispute ... purely between the party and his attorney." In any event, the district court, which had the opportunity to observe first-hand the proceedings now at issue, concluded that "[t]here is no doubt that the Plaintiff understood the settlement terms" and found that the agreement was "voluntarily entered into by the Plaintiff." It specifically stated that "Plaintiff's belated statement to the effect that he was forced into the settlement agreement by the Court or anyone else is ... untrue." The record before us discloses nothing to warrant a conclusion that this finding was clearly erroneous. We therefore are of opinion that the district court did not err in its determination that plaintiff's agreement to settle was voluntary, deliberate, and informed. It was "voluntary and knowing," in accord with Alexander.
 
 
 6
 As his second argument in support of his motion to set aside the settlement, the plaintiff argues that the agreement was null and void because it was not a mutually binding agreement. He claims that under the terms of the settlement agreement, there was no way in which the defendant's efforts to find him a job could be challenged or verified. We find this contention also to be without merit. The settlement agreement explicitly obligated the defendant to make a "good-faith effort" to find a position of employment and the court indicated that in carrying out this obligation, the defendant would be "dealing with the court." In line with this statement, the court required the defendant to report its efforts to the court from time to time. The district court found that the defendant had "made an honest effort to find work suitable to Plaintiff's ability and physical condition" and was "willing to carry out its obligations under the settlement, including paying all monies due under the agreement to Plaintiff and his attorney." Indeed, it was conceded before the district court that the plaintiff could not "suggest to the court that Philip Morris didn't exercise good faith." We accordingly find no error in the district court's determination that the settlement agreement constituted an enforceable agreement.
 
 
 7
 As a final matter, the plaintiff contends that the district court's award of attorney's fees to the defendant was improper. Upon the defendant's request for an award of its costs and attorney's fees incurred because of the necessity of bringing its motion to enforce the settlement, the court granted an award of $5,000 because of "Plaintiff's vexatious conduct" and "harassing tactics." It lies within the discretion of a district court to grant such an award"to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation...." Christiansburg Garment Co. v. Equal Opportunity Employment Comm'n, 434 U.S. 412, 421 (1978). A finding that a plaintiff brought or continued in bad faith the prosecution of a claim provides "an even stronger basis for charging him with the attorney's fees incurred by the defense." Christiansburg Garment Co., 434 U.S. at 422.
 
 
 8
 In the present case, we are of opinion that the district court did not err in awarding attorney's fees. The plaintiff prevailed on its motion to enforce the settlement agreement and we are of opinion that, under all the facts and circumstances, the district court was not "clearly wrong" in its findings concerning the plaintiff's actions in continuing to litigate after entering into a settlement agreement. Arnold v. Burger King Corp., 719 F.2d 63, 67 (4th Cir. 1983), cert. denied, 469 U.S. 826 (1984).
 
 
 9
 On the motion of the defendant for double costs and attorney's fees on appeal under F.R.A.P. 38, we find the appeal of the decision on the merits to be frivolous and award sanctions, but not double costs, but an additional attorneys' fee of $100.00. In the matter of the appeal from the award of sanctions, we affirm the judgment of the district court.
 
 AFFIRMED IN PART AND DISMISSED IN PART