16 F.3d 1225
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Sara J.W. LATHAN, Plaintiff-Appellant,
v.
Jesse BROWN, Secretary, Department of Veterans Affairs,
Defendant-Appellee.
 Nos. 91-2557, 91-2564.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 12, 1994.
Decided Feb. 8, 1994.
 
 1
 Before RIPPLE and MANION, Circuit Judges, and SHARP, District Judge.*
 
 ORDER
 
 2
 SHARP, District Judge.
 
 I.
 
 3
 This appellant, Sara J.W. Lathan, filed complaints and amended complaints in four cases in the district court, alleging employment discrimination under Title VII, 42 U.S.C. Sec. 2000e-5 against the defendant Secretary of the Department of Veterans Affairs on the basis of race and sex. The cases were consolidated in the district court and here. On May 6, 1991, the district court entered a final appealable order dismissing all of the plaintiff's claims with prejudice as against the appellee and timely notices of appeal were filed. This court has jurisdiction under 28 U.S.C. Sec. 1291. The district judge adopted an early and immediate hands-on approach to their proper disposition. The appellee Secretary filed a motion for summary judgment which was taken under advisement and triggered an extensive settlement effort in which the district judge was directly and extensively involved. The immediate question that this court must decide is whether it was reversible error for the district judge to dismiss these cases on May 6, 1991, pursuant to a settlement agreement enforced as the result of the plaintiff's refusal to sign the written agreement. The standard of review here is whether the district court's finding with regard to whether the appellant knowingly and voluntarily entered into a settlement agreement is clearly erroneous, and due regard must be given to the district court to judge the credibility of witnesses. See Rule 52(a), Fed.R.Civ.P. Anderson v. City of Bessemer City, 450 U.S. 564, 573 (1985). See also Glass v. Rock Island Refining Corp., 788 F.2d 450 (7th Cir.1986).
 
 II.
 
 4
 The appellant was an employee relations specialist for the Department of Veterans Affairs at North Chicago VA Medical Center. She filed four (4) separate Title VII cases which were consolidated and heard by Judge Will. After a period of discovery and motions, the parties and counsel under the direct supervision of Judge Will engaged in extensive settlement negotiations while the appellee's motion for summary judgment was pending. A hearing was held with the appellant present before the district judge on March 21, 1991, at which time the parties agreed to settle all claims and Judge Will agreed to dismiss the case pursuant to that settlement. Judge Will held another hearing at which the plaintiff was personally present on April 16, 1991 after the appellant had refused to sign a draft stipulation of the terms agreed on March 21, 1991. Judge Will on March 21, 1991, personally addressed both the appellant and her counsel in attempting to pin down precisely the agreement which had been reached and which he approved. On April 16, 1991, Judge Will found that the appellant was attempting to disavow the settlement to which she had previously agreed, and he ordered an enforcement of the settlement. On May 6, 1991, the district judge issued a minute order formally dismissing the case pursuant to the settlement agreement and a timely notice of appeal followed.
 
 
 5
 The appellant's employment at the North Chicago VA Medical Center generated considerable litigation, including this appeal of the settlement of four consolidated employment discrimination cases. The charges included discrimination because of race, sex and reprisal for filing earlier claims.
 
 
 6
 Beginning as early as January 18, 1991, the parties entered into a series of settlement discussions with the district judge. Quite appropriately, those discussions were off the record, but were clearly and explicitly confirmed on the record during proceedings held on March 21, 1991, and again on April 16, 1991. It is necessary to give close attention to the record of March 21, 1991, which, in its entirety, is before this court. At that proceeding, the appellant was personally present with attorneys James Romanyak and Gregory Stayart. Present also were Assistant United States Attorney Oswald and Michelle Fox, along with Linda Cobine of the Department of Veterans Affairs, Al Tate, Director of the North Chicago VA Medical Center, and Robert Grant, Chief of Personnel Services of the North Chicago VA Center. Formal on-the-record proceedings were had on March 21, 1991, as well as lengthy off-the-record discussions involving the parties and their counsel. Counsel of record representing both the appellant and the defendant appellee clearly and unequivocally advised Judge Will that a firm settlement had been reached. Assistant United States Attorney Oswald related the terms of the agreement which had been summarized on a piece of paper and signed personally by the appellant. Under the terms of the settlement, the appellee agreed to vacate a three-day suspension that had been imposed, remove a reprimand from the appellant's personnel file, and host a farewell party for her. The parties and counsel further agreed that the terms of the settlement would remain confidential, and that all employment recommendations for the appellant would be made by a Mr. Tate as the director of the Medical Center. It was further agreed that the plaintiff would receive a highly satisfactory performance rating for 1991, would receive a $3,000.00 award in return for dropping all legal claims arising out of her employment at the VA North Chicago. Assistant United States Attorney Oswald also explained that the agreement would provide a 90-day period of paid leave within which she could obtain new employment. Based upon the appellant's expressed interest, she would have one of two options. She could either take the certified public accountant (CPA) examination, and receive 30 days of annual leave, and 60 days of paid administrative leave, or she would not take the exam and receive 90 days of paid administrative leave. If at the conclusion of the 90-day period she did not find employment, she would be placed on leave without pay status for a period of up to two years. The leave without pay status would terminate upon her either finding other federal employment or a private sector job. Assistant United States Attorney Oswald was quite specific when he stated, "It is understood that on the 91st day, she will not be a paid employee anymore of the VA North Chicago." Assistant United States Oswald had concluded his lengthy summary of the terms of the settlement on the record. The appellant's attorney stated that she understood. Judge Will demanded even more specificity directly from the appellant, as follows:
 
 
 7
 THE COURT: That is no loss, right, Ms. Lathan?
 
 
 8
 MS. LATHAN: Not at all.
 
 
 9
 THE COURT: But you are going to withdraw all EEOC and other claims, workmen's comp and all the rest.
 
 
 10
 MR. ROMANYAK: Think Ms. Lathan wanted to thank you, your Honor, and certainly I do, too.
 
 
 11
 MS. LATHAN: Definitely, your Honor. Thank you very much for your patience and consideration.
 
 
 12
 Judge Will then buttoned down on the record with the written summary of the settlement terms signed by the appellant and dismissed the case on the grounds of the stipulation. The parties agreed to submit to the district court a written joint stipulation summarizing the terms of the settlement.
 
 
 13
 A draft of a written stipulation was prepared by Assistant United States Attorney Oswald and was submitted to the other attorneys of record for the appellant. She obviously balked at signing the document which triggered yet another proceeding on the record before Judge Will on April 16, 1991.
 
 
 14
 It is alleged in the briefs, at oral argument and it is not disputed, that Judge Will spent more than an hour and-a-half off the record with the parties and counsel on April 16, 1991. Then proceedings were had on the record. Some additional items were added by agreement which further benefited the appellant. Judge Will concluded on April 16, 1991, that a firm agreement had been entered into on March 21, 1991, which was "categorical as it can be." The colloquy between the appellant and Judge Will on April 16, 1991, is revealing:
 
 
 15
 MS. LATHAN: I did not agree to go on leave without pay to look for a federal job. I agreed to leave without pay to go into the private sector if I could.
 
 
 16
 THE COURT: Nothing in here which distinguishes whether you are going to look in the private sector of (sic) the public sector.... That was the agreement you made. It's as categorical as can be in the transcript. It's also categorical in the document you signed. Now we have added 30 more days to that. And you still don't like it. Well, I am simply--at this stage of the game, I have come to the conclusion that Ms. Lathan for whatever reason doesn't want to settle the case. And she wants to renege or disavow the settlement she previously agreed to. And so I am going to order settlement of the case, whether or not she signs the agreement, on the basis of the agreement which is--as revised, which so far as I am concerned not only reflects what she previously agreed to, but is more favorable from her point of view than what she previously agreed to.
 
 
 17
 Judge Will stated that he had "never seen a settlement which was more specifically reflected in a transcript and the document, which was agreed to by the parties and signed by her, and which has now been improved from her point of view, and she is still reluctant to sign it." This court agrees. Under the Civil Justice Reform Act of 1990, 28 U.S.C. Secs. 471-482, under a massive educational program for the federal judiciary by the Federal Judicial Center and the Administrative Office of the United States States, elaborate procedures are in place in all United States district courts for the settlement of civil cases. The statistics demonstrate that nationwide about 90% of civil cases are settled without a formal trial. None of those arrangements or those statistics, however, indicate that a party may be forced or coerced into settling a civil case when that party simply does not want to do so. However, the record in this case fails to disclose any heavy-handed judicial coercion to effect a settlement by this district judge. Quite to the contrary, the record in this case speaks to great patience, restraint and extensive hands-on involvement in the settlement process resulting in a specific and unequivocal settlement. In fact, the record here is much more formal and firm than the one in Glass. It was there held that if a settlement was voluntary and knowing, an oral agreement would support the same. The record in this case discloses that on March 21, 1991, this appellant voluntarily and knowingly agreed to a settlement. The decision in Alexander v. Gardner-Denver Company, 415 U.S. 335 (1974), in no way undermines those conclusions by this district judge. Such is supported not only by the formal verbatim record, but is also well supported by Joint Exhibit 1, which was a handwritten summary of the terms of the settlement which the appellant admits to signing. The district judge did not commit reversible error in enforcing the settlement by a dismissal. Such is now affirmed.
 
 
 18
 AFFIRMED.
 
 
 
 *
 Hon. Allen Sharp, Chief Judge for the Northern District of Indiana, is sitting by designation