In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1216

MARCIA BILLHARTZ, Executor of the
Estate of Warren Billhartz,

*Petitioner-Appellant,*

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee.*

Appeal from the United States Tax Court.
No. 12999-10 — **Maurice B. Foley**, *Judge.*

ARGUED MAY 28, 2015 — DECIDED JULY 23, 2015

Before FLAUM, KANNE, and SYKES, *Circuit Judges.*

FLAUM, *Circuit Judge.* Warren Billhartz left over $20 million to his four children when he died. When his Estate filed its estate tax return with the IRS, it claimed a deduction for a large portion of that amount—over $14 million. The IRS disallowed the deduction in full and issued the estate a notice of deficiency. The Estate then petitioned the United States Tax Court for redetermination of the deficiency, and a trial date was set. Before trial, though, the Estate and the Com-

missioner of Internal Revenue ("Commissioner") agreed to a settlement, under which the Commissioner conceded 52.5% of the claimed deduction. Soon after the settlement, however, Billhartz's children sued the Estate in state court; the children claimed that they were entitled to a larger portion of their father's fortune and that their prior acceptance of a lesser amount had been obtained fraudulently. At that point, the Estate asked the Tax Court to vacate the settlement on the basis that, were the children to prevail in state court, the settlement would bar the Estate from claiming an estate tax refund for any additional amount paid to the children. The Tax Court rejected the Estate's arguments, and entered a decision reflecting the terms of the settlement agreement.

We affirm. The Tax Court did not abuse its discretion by refusing to set aside the settlement.

## I. Background

Warren Billhartz ("Billhartz") married his first wife, Norma, in 1955. They had three daughters (Jan, Jean, and Susan) and one son (Ward). Billhartz and Norma divorced in 1978. In connection with the divorce, they entered into a Marital Settlement Agreement, which they filed with the Circuit Court for Madison County, Illinois. Only one part of that agreement is relevant to this appeal—the statement that "Husband covenants and agrees with Wife that an amount equal to one-half of the estate of Husband will be given in his Will to the children of the parties described in this Agreement, in equal shares."

Billhartz married his second wife, Marcia, in 1979, and they remained married until his death, in 2006. Following his remarriage, Billhartz executed a will and a trust. At the

time of his death, virtually all of his assets were either held in the trust or in joint tenancy with Marcia. The trust named Marcia and Ward as co-trustees. Under the terms of the trust, the trustee was to set aside an amount sufficient to purchase an annuity that would pay Norma $3,000 monthly. Of the remaining funds, 6% was left to each of Billhartz's three daughters, and 16% was left to Ward; the rest went to Marcia and to Billhartz's sister. To summarize: According to the Marital Separation Agreement, the four children were to receive 50% of Billhartz's "estate" (an undefined term), divided evenly. In the end, though, they cumulatively ended up with less than 34% of Billhartz's assets, divided unevenly. Nonetheless, after receiving notice of this discrepancy, all four children executed an agreement (the "2007 Waiver Agreement"), in which they accepted the lesser shares set out for them in the trust and waived all potential claims they may have been able to assert against either the Estate or the trust. The payments to the children totaled approximately $20 million; each daughter received about $3.5 million, while Ward received $9.5 million.

The Estate filed its estate tax return, signed by Marcia and Ward as co-executors, on May 21, 2007. Among other deductions, the Estate claimed a deduction of approximately $14 million for amounts passing to the children, equal to $3.5 million per child (even though Ward actually received significantly more). The Estate does not explain why it did not deduct the full amount paid to Ward, though we suspect it has to do with Billhartz's promise in the Martial Settlement Agreement to leave his children equal shares of his estate. The Estate claimed the deduction under 26 U.S.C. § 2053(a)(3), which permits deductions of claims against the Estate for an indebtedness founded on a promise or agree-

ment that was contracted bona fide and supported by adequate consideration. *See id*. § 2053(c)(1)(A). According to the Estate, the amounts paid to the children through the trust were paid in settlement of a debt owed to them by Billhartz pursuant to his contractual obligation under the Marital Settlement Agreement.

The Commissioner issued the Estate a notice of deficiency that disallowed in full the $14 million deduction and determined a tax deficiency of about $6.6 million. The Estate then petitioned the Tax Court for a redetermination of the deficiency amount. A trial date was set for April 18, 2012. But before trial, on April 5, the Estate accepted the Commissioner's settlement offer, in which the Commissioner agreed to concede 52.5% of the original $14 million deduction. The parties notified the Tax Court of the settlement the next day, and the trial was removed from the docket. On April 24, after a conference call with the parties, the court ordered them to submit by July 24 a decision document reflecting the terms of the settlement.

The next relevant events took place in Illinois state court, where, on June 12, 2012, Warren's daughters filed two lawsuits against the Estate, contending that the 2007 Waiver Agreement had been procured by fraud; Ward, after resigning as co-trustee, filed a similar lawsuit. The children argued that Marcia had intentionally and fraudulently concealed documents from them and had threatened to withhold any of the trust money from the children unless they signed the waiver. And, even though the 2007 Waiver Agreement mentioned the terms of the Marital Settlement Agreement, the children asserted that they did not became aware of their

right to 50% of the estate, and of the value of the estate, until the Estate brought the Tax Court case in 2012.

On July 6, 2012, because of the new state court lawsuits, the Estate asked the Tax Court for an extension of time to submit the decision document, and the court granted a 90-day extension. Then, on October 1, the Estate moved to restore the case to the general docket, arguing that it should be entitled to deductions under 26 U.S.C. § 2053 for any additional payments to the children arising from the state court litigation, and therefore that the settlement amount would have to be recalculated in the event of additional payments. The Commissioner opposed that motion, and instead moved for entry of a decision consistent with the terms of the parties' settlement agreement. The Estate opposed entry of a decision, arguing that the agreement had been predicated on a mutual mistake of fact—i.e., that the amount owed by the Estate to the children had been finally determined by the 2007 Waiver Agreement. The Estate also argued that the settlement should be set aside because the Commissioner knew that Billhartz's daughters were thinking of suing the Estate in state court; by not providing the Estate with that information, the Estate argued, the Commissioner committed fraudulent misrepresentation. The Estate conceded, however, that it had knowingly and voluntarily entered into the settlement agreement with the Commissioner.

While these motions were pending in the Tax Court, the Estate reached a settlement with the children in their state court lawsuits. As part of that settlement, the Estate agreed to pay each of the daughters an additional $1,450,000. The Estate informed the Tax Court of this development.

On June 14, 2013, the Tax Court denied the Estate's motion to restore the case to the general docket and granted the Commissioner's motion for entry of decision. The Tax Court also denied the Estate's subsequent motion to vacate the decision and order. The Estate now appeals, invoking our jurisdiction to review the decisions of the Tax Court. *See* 26 U.S.C. § 7482(a)(1).

## II. Discussion

We review the Tax Court's decision to enforce a settlement agreement for an abuse of discretion. *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995) (noting that a district court's decision to enforce a settlement agreement is reviewed for an abuse of discretion); *see also Freda v. Comm'r*, 656 F.3d 570, 573 (7th Cir. 2011) ("We review decisions of the tax court in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." (internal quotation marks omitted)). The Tax Court's denial of a motion to vacate a final decision is also reviewed for an abuse of discretion. *Drobny v. Comm'r*, 113 F.3d 670, 676 (7th Cir. 1997).

Before delving into the Estate's legal arguments, some background is helpful to understanding *why* it wants the settlement set aside. By settling this case, the parties essentially determined once and for all the total amount that the Estate could deduct as a result of its payments to Billhartz's children. That is because of 26 U.S.C. § 6512(a), which provides that, once the Tax Court's jurisdiction is invoked with respect to an estate tax return, no claim for a refund may be filed with respect to any future matter related to that return. That provision did not overly concern the Estate when it took this case to the Tax Court, as it didn't anticipate having to make

future refund claims—it believed that there would be no more payments to the children. When the children sued, however, the Estate was suddenly faced with the possibility that it would have to pay the children more money; even worse, § 6512 would bar the Estate from obtaining a refund for those payments, assuming that they were deductible.[1] The Estate's settlement with the Commissioner allows the Estate to deduct 52.5% of the $14 million the Estate originally thought it could deduct based on the 2007 Waiver Agreement. But, since the Estate ended up paying the children more than it expected to (an additional $1,450,000 to each daughter), it now seeks to deduct more.

It is important to understand, however, that the operation of § 6512 does not make this case unique. When parties to a civil suit reach a settlement, they are usually barred from later tearing up that agreement or filing a new lawsuit when they learn new information—not because of statute, but because of the terms of the settlement. And, of course, for cases that make it to trial, the doctrine of res judicata blocks future legal action based on the same claims. Settlements are meant to substitute certainty for risk, but that does not make them risk free. By settling, parties close the door to new information; that's risky, because they do not know whether new information will be helpful or harmful. A party may later come to believe that it received a bad (or good) deal, but only rarely will that provide grounds for setting aside the settlement.

---

[1] We express no opinion as to whether the Estate's payments to Warren Billhartz's children are rightly deductible under § 2053(a)(3).

For these reasons, courts should be hesitant to set aside settlements that are reached knowingly and voluntarily by the parties. *See Glass v. Rock Island Refining Corp.*, 788 F.2d 450, 454–55 (7th Cir. 1986). The Tax Court has its own test, laid out in *Dorchester Industries Inc. v. Commissioner*, for determining when to set aside a settlement. 108 T.C. 320, 335 (1997), *aff'd*, 208 F.3d 205 (3d Cir. 2000). When, as here, a "settlement agreement ha[s] led to the vacation of the trial date and would have led to entry of [a] decision[] had the parties complied with their agreement," a motion to vacate a settlement agreement will be denied "[a]bsent a showing a lack of formal consent, fraud, mistake, or some similar ground." *Id*.

The Estate presents two grounds that it contends meet this standard. First, it relies on the doctrine of mutual mistake of fact, arguing that "the parties' belief that the Estate's debt to the Children had been finally determined" by the 2007 Waiver Agreement "was a basic factual assumption underlying the April 2012 Settlement." It was a basic factual assumption, the Estate argues, because "the parties negotiated the April 2012 Settlement as a percentage of the Original Deduction that arose directly out of the" 2007 Waiver Agreement. As it turns out, the Estate argues, the amount actually paid by the Estate to the children was not finalized by the 2007 Waiver Agreement, and so the settlement was reached while the parties were mistaken about a key "fact."

A contract can be voided under the doctrine of mutual mistake if, at the time the contract was made, both parties were mistaken "as to a basic assumption on which the contract was made," and the mistake "has a material effect on the agreed exchange of performances." *United States v. Williams*, 198 F.3d 988, 944 (7th Cir. 1999) (citing Restatement

(Second) of Contracts § 151(1) (1981)). Here, though, we struggle to see how the finality of the Estate's payments to the children could have been a basic factual assumption underlying the settlement when the amount the Estate wanted to deduct ($14 million) was different from the amount the Estate agreed to pay the children in the 2007 Waiver Agreement ($20 million). (Recall that the Estate attempted to deduct less than the full amount that it paid to Ward.) The Estate has not explained how or why it chose the $14 million amount, so we don't know how or even if it would have changed if the amount originally paid to the children had been different.

More fundamentally, though, "rules governing rescission for either mutual or singular mistake are inapplicable where, as here, a party's erroneous prediction or judgment about future events is involved." *United States v. Sw. Elec. Coop., Inc.*, 869 F.2d 310, 315 (7th Cir. 1989). The Estate failed to foresee the children's lawsuit; there was no fact about which the parties were both mistaken at the time they reached the settlement. The Estate had made a $14 million deduction claim. Both parties knew this at the time, and it was a key background fact when the settlement was reached. It was true at the time, and the fact that the Estate now wants to claim a larger deduction does not render the previous deduction amount false. And that $14 million claim—not the amount actually paid to the children—was the basis for the Commissioner's settlement offer. The Commissioner surely did not care how much was actually paid to the children or whether that amount was final; rather, he cared only about the amount claimed by the Estate as a deduction.

Second, as we alluded to above, the Estate's argument is contrary to the very nature of settlements. Consider a lawsuit arising out of a car accident, in which the plaintiff, after consulting with an auto mechanic, initially claims $1000 in damages. The defendant does not think he is actually liable, but fears a large jury verdict and offers to settle for 40% of the plaintiff's claim ($400). The plaintiff accepts the settlement, but a couple of weeks later her car breaks down, and she discovers that the damage from the accident was more extensive than she initially thought—closer to $2000. Under the Estate's theory, the plaintiff could then try to vacate the settlement because the parties were "mistaken" as to a "fact"—i.e., that the amount of damage to the plaintiff's car had been finally determined at the time of the settlement. But, of course, that's not right: by agreeing to a settlement, the plaintiff waived any right to later argue that she actually deserved more than she previously asked for. It makes no difference that the settlement was calculated as a percentage of the amount claimed by the plaintiff—*all* monetary settlement amounts can be expressed as a percentage of the amount claimed by the plaintiff.

The Estate's second argument in favor of setting aside the settlement is its claim that the Commissioner made a misrepresentation during settlement negotiations by knowingly omitting a material fact—specifically, that the children "might initiate a new lawsuit against the estate." The Estate asserts that, at some time between February and April 2012 (before the settlement was reached), the Commissioner's counsel spoke with Billhartz's daughter Jean, and Jean stated that she was considering consulting with an attorney to see if she could sue the Estate.

An alleged misrepresentation by omission will only void a contract when the omitting party "knows that disclosure of the fact would correct a mistake of the other party as to a basic assumption on which the party is making the contract." *Jordan v. Knafel*, 880 N.E.2d 1061, 1071–72 (Ill. App. Ct. 2007)[2] (citing Restatement (Second) of Contracts § 161(b) (1981)). All the Commissioner knew, however, was that Jean *might* sue. The Estate, of course, knew that as well—anyone might sue at any time, especially people who have a colorable argument that they were shorted millions of dollars from their father's estate. Jean's statement was far too nebulous to cause the Commissioner to know that disclosure of the statement would correct any mistaken assumption made by the Estate; a plan to consider speaking to a lawyer is a far cry from a concrete plan to sue. Moreover, regardless of what the Commissioner knew about Jean's plans, he did not know the Estate's beliefs regarding the likelihood that she would sue, and therefore he could not have known that disclosing Jean's plans would have corrected a mistaken belief held by the Estate.

Additionally, the Estate was in a much better position than the Commissioner to anticipate the children's litigation, meaning that the Commissioner's omission likely wouldn't have changed the Estate's views regarding the likelihood of a lawsuit. In their state court suits, the children claimed that the Estate had fraudulently induced them into accepting the 2007 Waiver Agreement. If those claims were valid, the Estate should have expected a lawsuit; if it committed fraud, it certainly would have known. On the other hand, it is possi-

―――――――――――――――――――

[2] Both parties agree that Illinois law applies to the contract aspects of this case.

ble that the children's claims were meritless. In that case, it is possible that the lawsuits came as a surprise to the Estate and that the Commissioner's knowledge regarding Jean's plans could have alerted the Estate to the possibility of a suit. But, in that scenario, the Commissioner's omission would have been harmless, as the Estate would not have had to make further payments to the children.[3]

Finally, aside from the *Dorchester* test, the Estate argues that the Tax Court, by refusing to delay entry of its decision until after the state court cases had been adjudicated, violated Treasury Regulation § 20.2053-4(a)(2), which states, "Events occurring after the date of a decedent's death shall be considered in determining whether and to what extent a deduction is allowable under section 2053." As is clear from its plain language, however, this regulation was irrelevant in this case, as the Tax Court never made a determination as to "whether and to what extent a deduction [was] allowable." Rather, the parties' settlement conclusively established the amount that the Estate could deduct. It was not the province of the Tax Court to determine whether this amount was correct.[4]

---

[3] There was, of course, ultimately a settlement in the children's cases, but that does not change the analysis. Perhaps no fraud occurred, and the Estate chose to settle in order to dispose of the cases. The Estate's choice to voluntarily pay the children extra money should not affect the Commissioner's right to what was agreed upon in the settlement in this case. Or, perhaps there was fraud, and the children gave up the possibility of a larger payday in favor of a settlement. In that case, the Estate should have predicted the suit, meaning that any omission by the Commissioner was harmless.

[4] The Estate also argues that the Tax Court abused its discretion by not stating its reasons for rejecting the Estate's claims of mutual mistake and

## III. Conclusion

The Tax Court did not abuse its discretion in denying the Estate's motion to vacate the parties' settlement. The judgment of the Tax Court is therefore AFFIRMED.

---

misrepresentation. This argument was raised for the first time in the Estate's reply brief, and therefore we will not consider it, as "it is well-settled that arguments first made in the reply brief are waived." *TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 630 (7th Cir. 2007).