Morris G. **WORTHY**, Appellant,

v.

**McKESSON CORPORATION d/b/a Peter Hauptmann Company,** Appellee.

No. 84–1740.

United States Court of Appeals, Eighth Circuit.

Submitted March 13, 1985.
Decided March 20, 1985.

Doris Gregory Black, St. Louis, Mo., for appellant.

Jeffrey A. Norris, Washington, D.C., for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and FAGG, Circuit Judge.

PER CURIAM.

Morris G. Worthy filed suit against his employer, McKesson Corporation, d/b/a Peter Hauptmann Company (the Company), alleging that the Company retaliated against him because he had filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC). Prior to trial, the parties entered an oral agreement which purportedly extinguished "all claims" of Worthy's in exchange for $15,-000.00. Before a written settlement agreement was signed, Worthy hired new counsel and requested the court to again set the case for trial. The district court[1] ordered enforcement of the agreement. Worthy appeals contending that the agreement was not meant to encompass his wrongful discharge claim. He also alleges his prior counsel lacked authority to bind him to the agreement. We hold that none of the district court's findings of fact is clearly erroneous and affirm.

Worthy was employed by the Company as a field sales manager. In April of 1981 he filed an EEOC complaint alleging race discrimination with regard to certain job assignments he had been given. Later that year Worthy was placed on probation which precipitated a second EEOC charge alleging retaliation for the filing of the first complaint. On January 13, 1983 the Company terminated Worthy for cause.

Worthy subsequently filed a lawsuit under both Title VII, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981, alleging that "[s]ince April 8, 1981, and continuing up until January 13, 1983," the Company engaged in unlawful employment practices in retaliation for his filing of the EEOC charge. Calendar proceedings were set for February 21, 1984 with trial expected shortly thereafter.

Worthy's deposition was scheduled to be taken on February 14, 1984. Counsel for

1. The Honorable Stephen N. Limbaugh, United States District Judge, Eastern District of Missouri.

the Company, Worthy, and attorney Carolyn Whitehorn were all present. Attorney Christopher Smith had been retained by Worthy to represent him and Whitehorn was assisting Smith as co-counsel. The parties discussed the possibility of settlement of all of Worthy's claims, but agreement as to the amount of the settlement was not reached. The deposition then began and continued throughout the remainder of the day.

Before the deposition continued the next day, the parties again discussed possibility of settlement. Worthy authorized Whitehorn to suggest a figure of $26,000.00. The Company, through its attorneys, counteroffered $15,000.00 and again emphasized that the settlement must encompass "all claims." Whitehorn indicated she understood this and stated she would relay the Company's offer to Worthy.

After consulting with Smith who approved the $15,000.00 figure, Whitehorn met with Worthy. Worthy agreed to accept the Company's offer in settlement of all claims. Whitehorn then informed Company counsel that Worthy had accepted the offer. The Company was to prepare formal settlement documents. Worthy's deposition was cancelled, all trial preparation ceased, and Whitehorn removed the case from the trial docket.

A few days later Worthy consulted another attorney, Doris Black, for a "second opinion." Black advised that the case "had possibilities" and should not be settled. Worthy then spoke with attorney Smith and requested that Smith ask the court for a continuance of the trial date. Smith told Worthy that he felt Worthy was bound by the settlement agreement and that, in view of the circumstances, his firm could no longer represent Worthy.

On February 21, 1984 Worthy personally appeared before Judge Limbaugh to request a continuance and informed him that

he had retained Black as his attorney. The district court denied Worthy's request.

The Company then filed a motion to enforce the settlement agreement. After conducting a hearing and making findings of fact, the district court enforced the settlement agreement. The court concluded that Worthy was attempting to avoid "being bound by a voluntary oral agreement to settle all claims against the [Company] for a sum he now believes to be 'paltry.'"

Worthy now makes the same arguments that were rejected by the district court. His first contention is that he did not intend to relinquish his claim for wrongful termination in agreeing to accept the Company's offer of settlement.

However, Worthy has not shown that any of the district court's findings of fact are clearly erroneous. *See* Fed.R.Civ.P. 52(a). "Crucial to the construction of the settlement agreement is the intent of the parties." *Press Machinery Corp. v. Smith R.P.M. Corp.*, 727 F.2d 781, 784 (8th Cir. 1984). Intent is a question of fact. *E.g., Pullman-Standard v. Swint*, 456 U.S. 273, 288, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982); *Jennings v. Metropolitan Government of Nashville*, 715 F.2d 1111, 1114 (6th Cir.1983).

 There is abundant evidence that Worthy's assent to settling "all claims," including any claim for wrongful discharge, was "knowing and voluntary." *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 n. 15, 94 S.Ct. 1011, 1021 n. 15, 39 L.Ed.2d 147 (1974). Whitehorn testified that she spoke with Worthy for over an hour and that they discussed the fact that Worthy "would not go to trial" and that "he would have to give up his claims." Whitehorn specifically stated that Worthy understood that he was settling all of his claims, including wrongful termination. Worthy's understanding was that "I'd have

to give up everything" and that "I wouldn't have my day in court." In addition, we observe that the wrongful termination claim was to be included as an issue in the lawsuit. The complaint states that the Company retaliated against Worthy for filing the EEOC charge from April of 1981 "continuing up until January 13, 1983," the date Worthy was discharged. This construction of the complaint is bolstered by testimony from Christopher Smith, Worthy's former attorney, who stated that he considered Worthy's termination to be a part of the Company's alleged retaliatory conduct and that settlement of the retaliation case was a settlement of the termination claim. *See Young v. Powell,* 729 F.2d 563, 566 (8th Cir.1984) (if claim is an issue in the lawsuit and parties settle all disputed issues in the case, claim is clearly within scope of settlement agreement). "If a settlement does not resolve all issues in a case, the parties should not stipulate to a dismissal without reserving the unresolved issues or in some appropriate way indicating their intent as to such issues." *Id.* at 567 n. 3.

■ Moreover, parties to a voluntary settlement agreement cannot avoid the agreement simply because the agreement ultimately proves to be disadvantageous. *Trnka v. Elanco Products Co.,* 709 F.2d 1223, 1227 (8th Cir.1983). We agree with the district court that Worthy is attempting to rescind an otherwise voluntary agreement because he now feels the amount of the settlement is "paltry." "If a party to a Title VII suit who has previously authorized a settlement changes his mind . . ., that party remains bound by the terms of the agreement." *Fulgence v. J. Ray McDermott & Co.,* 662 F.2d 1207, 1209 (5th Cir. 1981).

■ Worthy also contends that lack of mutual assent is shown by the fact that there are several terms in the written agreement he did not knowingly agree to.

These include a covenant that Worthy would not seek reemployment with the Company, that he would not disclose the terms of the settlement to other employees of the Company, and a general release of claims.

As to the general release of all claims, we have already stated that the district court properly found this was agreed to by Worthy. As to the other terms, we do not believe they are so significant that they can be used to abrogate the agreement. "[T]he fact that the parties left insubstantial matters for later negotiation . . . 'does not vitiate the validity of the agreement reached.' " *Trnka,* 709 F.2d at 1226 n. 2 (quoting *Bergstrom v. Sears, Roebuck & Co.,* 532 F.Supp. 923, 932 (D.Minn.1982)). Here, all material terms were agreed upon by the parties.

Moreover, it is clear that the inclusion of the terms was not the reason Worthy sought to repudiate the agreement. He sought to extricate himself from the agreement several days *before* he even saw the written agreement.

■ Finally, there is no evidence that Whitehorn lacked the authority to accept the Company's offer on behalf of Worthy. After discussing the matter, Worthy expressly authorized Whitehorn to accept the Company's offer.

In sum, we agree with the district court that:

> Ms. Whitehorn had represented plaintiff's interests from the day his complaint was first filed and there is no reliable evidence to indicate that she was not his counsel along with Mr. Smith. Even if Mr. Smith were plaintiff's 'counsel of record,' Ms. Whitehorn negotiated and consummated the deal with Mr. Smith's full knowledge and approval. Plaintiff, in fact, discussed the settlement at the time with Smith by telephone. All counsel understood the mate-

rial terms of the settlement agreement and the evidence indicates that plaintiff understood that this agreement was to dispose of all claims against defendant.

These findings are not clearly erroneous. Therefore, we affirm the judgment of the district court.