CROWE–THOMAS CONSULTING GROUP, INC., Appellant,

v.

FRESH PAK CANDY CO., INC., and Sieg Co., Appellees.

No. 91–1782.

Court of Appeals of Iowa.

Oct. 27, 1992.

John J. Carlin of Carlin, Hellstrom & Bittner, Davenport, for appellant.

Thomas D. Hanson of Hanson, Bjork & Russell, Des Moines, for appellees.

Considered by DONIELSON, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

## FACTS

During 1988, Fresh Pak Candy Co. was a wholly-owned subsidiary of the Sieg Company. On March 23, 1988, Fresh Pak entered into an agreement with Crowe–Thomas Consulting Group, Inc. According to the agreement, Crowe–Thomas was to perform certain services in connection with the sale of Fresh Pak. The agreement specifically provided for fees to be paid to Crowe–Thomas in unnumbered paragraph 5 which states:

For his services as a Consultant, John M. Crowe shall be paid compensation for his services at no less than $2,500.00. Consultant shall also be reimbursed by Fresh Pak for Consultant's subsequent sale of Fresh Pak at the rate of $45,000 due and payable at closing less his $2,500.00 non-refundable retainer fee. The $42,500 will be payable only if an acceptable sale to Seller is made within six months.

On September 26, 1988, the parties executed an "addendum" to the agreement. The addendum in its entirety provides as follows:

Pursuant to our discussions regarding our mutual agreement to sell the assets of the Fresh Pak Candy Co., signed on March 23, 1988, following is the modification to that agreement that our companies have agreed upon.

"The fees for our sales assistance will be $45,000.00, due and payable upon the acceptance of any offers by both the buyer and seller, less the $2,500.00 non-refundable retainer fee Sieg Co. advanced upon the acceptance of the original agreement dated on March 23, 1988. Our exclusivity for the sale agreement shall extend to March 31, 1989 for all new prospects introduced by our firm to the Sieg Co. and Fresh Pak Candy Co. Additionally, the same fee of $42,500.00 shall become due and payable should any previously introduced Crowe–Thomas prospects purchase the assets or enter into a joint venture with Sieg Co. and/or the Fresh Pak Candy Co."

I believe this covers all the contingencies we have discussed. Once again Thank you for allowing us to be of service.

Crowe–Thomas attempted to find buyers for the business. However, Jerry Lorber, a Fresh Pak official who had a contractual option to purchase Fresh Pak, was also attempting to locate buyers. Lorber was successful in finding a prospective buyer, a group of investors (the Investor Group) led by Ned E. Mitchell and Bruce Shankman. As negotiations proceeded, Sheldon Harris, a board member of the Sieg Company, drafted and transmitted a letter of intent dated November 9, 1988, to the Investor Group which provided:

14. **This is a letter of interest only and is subject to the negotiation and execution of a definitive agreement** which will incorporate all of the terms and conditions of this proposal, and any such additional terms or conditions as negotiated, and which will require the approval of the Boards of Directors of the Sieg Company and Fresh Pak, as well as, all of the members of the Investor

Group and any shareholder approvals which are required. No claim may be asserted against the Investor Group or Sieg/Fresh Pak for failure to negotiate or to execute a definitive agreement.

**Sieg/Fresh Pak invites the parties to sign copies of this letter and turn this matter over to our respective attorneys for purposes of forming a definite contract.**

(emphasis added).

The November 9, 1988, letter was signed by the Investor Group through Mitchell and Shankman and then returned to the Sieg Company. Fresh Pak turned the matter over to its attorney who then drafted a definitive agreement. However, as negotiations continued, the Investor Group began changing material terms, and the negotiations eventually terminated.

Crowe–Thomas instituted these proceedings claiming it was entitled to compensation from both Fresh Pak and the Sieg Company under the consulting agreement based on Sheldon Harris's letter dated November 9, 1988. The matter was submitted to the trial court upon a written factual record. The court found Sheldon Harris's letter did not constitute an offer. It found the letter was merely an invitation to continue more definitive negotiations. It ultimately concluded Crowe–Thomas was not entitled to compensation because there was no offer and acceptance of any sales agreement. The court dismissed Crowe–Thomas's claim for a consulting fee. Crowe–Thomas appeals. We affirm.

### SCOPE OF REVIEW

■ Our review in this case is for correction of errors at law. Iowa R.App.P. 4. Findings of facts in a law action are binding on us if supported by substantial evidence. Iowa R.App.P. 14(f)(1). We construe the trial court's findings broadly and liberally. *Grinnell Mut. Reins. Co. v. Voeltz*, 431 N.W.2d 783, 785 (Iowa 1988). In case of doubt or ambiguity, we construe the findings to uphold, rather than defeat, the trial court's judgment. *Id.* We are prohibited from weighing the evidence or the credibility of the witnesses. *Id.*

A finding of fact is supported by substantial evidence if the finding may be reasonably inferred from the evidence. In evaluating sufficiency of the evidence, we view it in its light most favorable to sustaining the court's judgment. We need only consider evidence favorable to the judgment, whether or not it was contradicted. *Briggs Transp. Co. v. Starr Sales Co.*, 262 N.W.2d 805, 808 (Iowa 1978).

■ "Evidence is substantial or sufficient when a reasonable mind could accept it as adequate to reach the same findings." *Waukon Auto Supply v. Farmers & Merchants Sav. Bank*, 440 N.W.2d 844, 846 (Iowa 1989) (citation omitted). Evidence is not insubstantial merely because it could support contrary inferences. *Grinnell Mut. Reins. Co.*, 431 N.W.2d at 785 (citation omitted).

### ANALYSIS

Crowe–Thomas argues the trial court erred in finding there was no offer and acceptance of a sales agreement. Crowe–Thomas claims Sheldon Harris's letter dated November 9, 1988, constituted an offer and there was an acceptance by the Investor Group and that it was not necessary that there be a binding agreement of sale. Consequently, it contends it is entitled to a consulting fee under the terms of the agreement it has with Fresh Pak.

As previously stated, Crowe–Thomas argues it is entitled to a fee "[u]pon the acceptance of any offers by both the buyer and seller...." The trial court held otherwise when it determined Sheldon Harris's letter dated November 9, 1988, did not constitute an offer but was merely an invitation to continue more definitive negotiations. It is clear from the language of the November 9, 1988, letter, the letter to the Investor Group was nothing more than an invitation to continue negotiations with an agreement to agree or disagree in the future.

■ There is little, if any, dispute to that general proposition of law that an agreement to agree to enter into a contract

is of no effect unless all of the terms and conditions of the contract are agreed on and nothing is left to future negotiations. *See* 17 C.J.S. *Contracts* § 49 (1963); *Air Host Cedar Rapids, Inc. v. Cedar Rapids Airport Comm'n,* 464 N.W.2d 450 (Iowa 1990). In this respect, paragraph 14 of the letter does state: "This is a letter of interest only and is subject to the negotiation and execution of a definitive agreement...." The letter further states: "Sieg/Fresh Pak invites the parties to sign copies of this letter and turn this matter over to our respective attorneys for purposes of forming a definite contract."

Ordinarily, this would dispose of the case. However, the appellant argues that the September 21, 1988, addendum modified the brokerage agreement from one requiring a binding contract of sale to another that was contingent only upon an offer and acceptance. The appellant completes his argument by contending plaintiff need not show there was a valid contract, but only that an offer and acceptance existed.

We are unable to read the "offer and acceptance" provision of the agreement with Fresh Pak in isolation. It must be construed with all of the provisions of the contract and the accompanying letters which were made a part of the record. It is clear from the agreement and the addendum that the plaintiff was retained to sell the assets of Fresh Pak. The addendum prepared by the plaintiff provides "pursuant to our discussions regarding our mutual agreement to sell the assets of the Fresh Pak Candy Co...."

From our examination of the record, we conclude as the trial court did that the letter relied up by the plaintiff was nothing more than an invitation to attempt to reach an agreement of sale. It was not an offer within the meaning of the brokerage agreement for as previously pointed out, when that agreement and the accompanying letters are read in their entirety, the offer had to couple with an agreement to sell and an acceptance thereof. If such an arrangement had been reached, according to the addendum plaintiff would be entitled to the

$42,500 at that time and need not wait for the closing date as previously provided.

## CONCLUSION

We hold the trial court's finding there was no offer and acceptance is supported by substantial evidence. Therefore, Crowe–Thomas was not entitled to a consulting fee. After considering all issues presented, we affirm the trial court.

Costs of this appeal are taxed to the appellant.

AFFIRMED.