UNITED STATES of America for the Use of McDERMITT, INC., Plaintiff,

v.

CENTEX–SIMPSON CONSTRUCTION COMPANY, INC. et al., Defendants.

No. Civ.A. 3:96–CV–54.

United States District Court, N.D. West Virginia, Martinsburg Division.

Jan. 7, 1999.

William A. Kolibash, Wheeling, WV, David G. Jenkins, Pittsburgh, PA, for plaintiff.

Curtis G. Power, III, Martinsburg, WV, David B. Hamilton & David L. Cole, Baltimore, MD, for defendants.

## MEMORANDUM OPINION AND ORDER

BROADWATER, District Judge.

### I. INTRODUCTION

Defendants Centex–Simpson Construction Company, Inc. ("Centex"), *et. al.,* have filed a motion to enforce settlement agreement (Document # 111). Plaintiff McDermitt, Inc. ("McDermitt") opposes the Motion. For the reasons stated below, Centex's motion will be granted.

## II. FACTS

In 1994, McDermitt contracted with Centex to provide concrete, labor and materials on two construction projects: the State Farm Mutual Automobile Insurance Company Seaboard Regional Office in Frederick, Maryland ("State Farm"); and the United States Fish and Wildlife Service National Education and Training Center in Shepherdstown, West Virginia ("NETC" and collectively the "projects").

Disputes ensued between the parties. In September 1996, McDermitt filed suit in this Court claiming payments owed regarding NETC, and Centex filed a Counterclaim for breaches of contract for alleged failure to perform the work required by the contracts for the projects.

An initial conference was held before this Court on May 15, 1998 in which Centex and McDermitt agreed on the record before this Court to settle their disputes (Documents # 98 and 99). Counsel and principals for Centex and McDermitt verbally agreed that Centex would pay McDermitt $217,500 in return for settlement and release of all of McDermitt's claims against Centex. Illustrative of the scope and finality of the settlement agreement and release was the fact that one relatively small pending claim was specifically excepted from the settlement agreement by McDermitt.

Counsel for Centex drafted a standard settlement agreement and release and forwarded it to counsel for McDermitt. The draft included a standard release clause and a standard confidentiality clause. Counsel for Centex was then informed by counsel for McDermitt that McDermitt would not sign the agreement unless the confidentiality and release provisions, as drafted, were removed. Centex refused to remove either clause, based upon the position that the provisions had been agreed upon and as well as having learned that McDermitt, or its principal, planned to file additional action or actions related to the projects against Centex, thereby vitiating the intent of a settlement payment by Centex.

On June 18, 1998, McDermitt filed a motion to enforce the settlement agreement (Document # 101), complaining that Centex "has included two objectionable provisions in the Settlement Agreement and Release which were not part of the Settlement Agreement and which were never discussed ... during the settlement conference." Centex timely filed a cross-motion to enforce the settlement agreement (Documents # 102), to which McDermitt filed a reply (Document # 103) that asserted that no dispute existed because the release language in its own proposed draft settlement agreement and release "would clearly preclude any of the above-mentioned actions [those that Centex's proposed release provisions would preclude] and thus no additional language is necessary."

A second status conference was held before this Court on August 27, 1998 in an effort to resolve the dispute. Significantly, counsel for both parties and this Court all agreed on the record that a valid settlement agreement was entered on May 15, 1998.[1]

As to the specific language of the Settlement Agreement and Release, this Court determined that the " 'Settlement Agreement and Release' entered by the parties to be in accordance with the draft attached as Exhibit "C" to the plaintiff's motion to enforce settlement (Document # 101) and as Exhibit "A" to defendants' cross-motion to enforce settlement agreement (Document # 102) to include all language in Paragraph 2 'Release' of said 'Settlement Agreement and Release' specifically *including* the disputed language of Paragraph 2 on page 3 but not including Paragraph 9 'Confidentiality.' "[2]

Therefore, the Settlement Agreement and Release entered by the parties and as inter-

---

1. *See* transcript of status conference, dated August 27, 1998, (Document # 108), at pages 4, 5, and 8 (statements of Mr. Kolibash), pages 12 – 13 (statements of Mr. Cole), pages 20 – 21 (statements of Judge Broadwater). *See also* transcript of telephonic settlement conference, dated May 15, 1998, (Document # 99) at pages 7 and 8.

2. *See* Order granting, plaintiff's motion to reopen (Document # 107) at ¶ 4 (emphasis in original). *See also* transcript of status conference, dated August 27, 1998, at pages 21 – 22.

preted by the Court reads as set forth in Appendix A attached hereto.

Centex maintains that McDermitt failed to honor that to which it was committed by refusing to sign and abide by the settlement agreement and thus is in breach. Accordingly, Centex, as the party not in breach, has again requested the assistance of this Court in enforcing the settlement made on May 15, 1998 and clarified by this Court on August 27, 1998 by filing a second motion to enforce settlement (Document # 111).

## III. DISCUSSION

### A. This Court Has The Authority To Enforce A Binding Settlement Agreement Without Further Hearing.

■ A strong policy of the Fourth Circuit is to foster settlement in order to advantage the parties and to conserve scarce judicial resources. *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir.1993). Once a settlement agreement is reached, a district court judge possesses "the inherent authority to enforce a settlement agreement and to enter judgment based on an agreement without a plenary hearing." *Petty v. The Timken Corp.*, 849 F.2d 130, 132 (4th Cir.1988); *Young v. F.D.I.C.*, 103 F.3d 1180, 1194 (4th Cir.1997); *Millner v. Norfolk & W.R. Co.*, 643 F.2d 1005, 1009 (4th Cir.1981).[3]

■ For example, when parties have agreed to a settlement that was reduced to terms of dollars and cents, the district court has the power and authority to enforce payment of that amount and should not set aside the agreement absent substantial unfairness. "Trial courts possess the inherent authority to enforce a settlement agreement and enter judgment without a plenary hearing.... Unless the resulting settlement is substantially unfair, judicial economy commands that a party be held to the terms of a voluntary

agreement." *Petty*, 849 F.2d at 132–33 (internal citations omitted).

■ A motion to enforce a settlement agreement is an action for specific enforcement of a contract. *Adams v. Johns–Manville Corp.*, 876 F.2d 702 (9th Cir.1989). The general principle is that a settlement agreement, voluntarily entered into, cannot be repudiated by either party and will be summarily enforced by the court. *Petty*, 849 F.2d at 133 (defeated expectations do not entitle the litigant to repudiate commitments made to opposing parties or to the court); *Mungin v. Calmar Steamship Corp.*, 342 F.Supp. 484, 485 (D.Md.1972); *Autera v. Robinson*, 419 F.2d 1197, 1201 n. 17 (D.C.Cir. 1969). *See also Worthy v. McKesson Corp.*, 756 F.2d 1370 (8th Cir.1985) (parties to a voluntary settlement agreement cannot avoid the agreement simply because the agreement later proves to be disadvantageous). Because "a settlement agreement enjoys great favor with the courts, consequently, it is only in the most *extraordinary circumstances* that such a pact will be vacated...." *Mungin*, 342 F.Supp. at 485 (emphasis added).

### B. Centex And McDermitt Have A Binding Agreement To Settle.

■ A settlement agreement is a contract governed by fundamental principles of contract law. As such, the settlement agreement comes into being as soon as an offer, acceptance, and consideration are exchanged, regardless of whether the agreement is subsequently formalized in writing. *See Lucas v. United States*, 25 Cl.Ct. 298 (1992) (contract is a written or oral exchange containing agreement, mutual assent); *Martin v. Ewing*, 112 W.Va. 332, 164 S.E. 859 (W.Va.1932).

■ A settlement agreement made in open court, such as the agreement McDermitt entered into with Centex, is a valid, enforceable agreement and need not be reduced to writing. *See Petty*, 849 F.2d at 133; *Wilson*, 46

---

**3.** The Fourth Circuit stands in line with the majority of the other circuits. *See, e.g., Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir.1995) (stating that circuits have uniformly stated that a district court possesses the inherent or equitable power summarily to enforce an agreement to settle a case pending before it) (citations omitted); *Vari–*

*O–Matic Mach. Corp. v. New York Sewing Mach. Attachment Corp.*, 629 F.Supp. 257, 258 (S.D.N.Y.1986) (stating that a court has the inherent power, and *indeed the duty*, to enforce a settlement in a case pending before it) (emphasis added).

F.3d at 660[4]. Failure to complete formal settlement papers does not indicate that a settlement agreement was not in fact reached. *Vari–O–Matic Mach. Corp.*, 629 F.Supp. at 259; *Autera*, 419 F.2d at 1198 n. 1 (lawsuits may be compromised by oral contract).

In *Wilson*, a case essentially on point, an oral settlement agreement was enforced by the appellate court. The parties reached a settlement figure at a pre-trial conference before the district court judge but were subsequently unable to reduce other terms of the agreement to writing. Similarly, the parties disagreed regarding the extent to which the appellee would be limited from bringing future claims.

The appellate court affirmed the district court judge's ruling that a valid settlement agreement existed. The appellant in *Wilson* argued that the oral settlement agreement was insufficiently definite to be enforceable. Therefore, the appellant submitted that the parties had never "reached a meeting of the minds" required to create a valid settlement agreement, the appellate court disagreed, noting that under applicable state contract law:

> A contract is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do.... There can be no doubt over what the parties in open court had agreed to do: [appellee] would drop all of his claims against the defendants in exchange for their offer to settle his claims for $1.2 million. That the parties did not specify the legal form of [appellee]'s promise is of no consequence; that fact is that after the [settlement] hearing the parties had an objective basis for determining when either party had

breached the oral settlement agreement. No more is required to overcome a challenge to a contract's enforceability....

*Wilson*, 46 F.3d at 667 (citation and internal quotation omitted).

■ A party who knowingly and voluntarily settled all claims before the court cannot later avoid the agreement by contesting ancillary terms of the agreement. For example, in *Worthy*, the appellate court upheld enforcement of a monetary settlement agreement, even though there were several terms in the final written agreement that the appellee had not knowingly agreed, including a confidentiality provision and a general release of claims. *Worthy*, 756 F.2d at 1373. Similarly, in *Sheng v. Starkey Labs. Inc.*, 117 F.3d 1081 (8th Cir.1997), the appellate court upheld an oral settlement agreement that did not include specific language regarding tax treatment of the settlement sum, confidentiality, and release of liability, when the essential terms had been finalized by the parties.

As well, the Fourth Circuit has determined settlement agreements made in open court to be binding agreements. In *Petty*, the court found that the defendant "made an offer of settlement, that the offer was communicated to [plaintiff] by his counsel, that [plaintiff] agreed to accept [it] ..., and that [plaintiff] reaffirmed his acceptance in open court. Clearly a settlement did exist." *Petty*, 849 F.2d at 132–33.

In the present case, as in the cases cited herein, the parties knew precisely what they were agreeing to at the first telephonic settlement conference. In exchange for $217,-500, McDermitt agreed to release all present and future claims, with the explicit exception of a single potential claim. McDermitt had ample opportunity to inform the Court and

---

4. Notably, in *Wilson*, the district court judge, in ruling that a valid settlement agreement existed, refused to conduct further evidentiary hearings on the matter; "having reached the conclusion that there was a settlement in open court, I don't see why I need to have a hearing ..." *Id.* at 665. The district court and appellate court concurred that the objecting party, after representing in open court that a settlement agreement had been reached, could not later attempt to raise an issue of fact regarding the existence of a settlement agreement. *Id.* (citing *Petty*, 849 F.2d at 133). *See also Vari–O–Matic Mach. Corp.*, 629 F.Supp. at 259 (parties who represent to court that a settlement has been reached must comply with their representations without further hearings). The parties to the present dispute, as well as the Court, made repeated statements that a settlement agreement has been reached.

Centex that it also intended to except any other contemplated action against Centex from the agreement but did not do so. Thus, all evidence before the Court at the time of the agreement indicated the essential scope of the settlement. McDermitt agreed to settle all claims, save one, in exchange for $217,-500. "Second thoughts [about settlement do not] justify setting aside an otherwise valid agreement." *Petty*, 849 F.2d at 133. *See also Worthy*, 756 F.2d at 1373.

It is undisputed by the parties, unquestioned by this Court, and amply supported by the record that a settlement agreement was entered into by the parties on May 15, 1998. As the principals were present, there is no disagreement regarding counsel's authority to enter into the agreement. Indeed, Robert Mumma, principal of McDermitt, himself agreed to the settlement, stating to counsel on the record, "[W]e will take it, Bill." [5] There is no disagreement that the parties assented to a settlement, and any remaining conflict can hardly be termed "extraordinary circumstances." Accordingly, revisitation of the agreement by the parties is impermissible as a matter of law, and this Court must enforce the Settlement Agreement. *Petty*, 849 F.2d at 133; *Mungin*, 342 F.Supp. at 485.

## IV. CONCLUSION

Centex and McDermitt entered into a binding settlement agreement on May 15, 1998. There is no evidence of any dispute as to the existence of an agreement, material terms of the agreement, or authority of counsel to enter the agreement, that would require the court to conduct a hearing or void the settlement agreement. Wherefore, having considered the Centex motion to enforce settlement agreement and the supporting memorandum, McDermitt's response, and Centex's reply, it is hereby

**ORDERED**

1.  That the defendant's motion to enforce settlement agreement (Document # 111) be **GRANTED;**
2.  That the parties shall comply fully with the Settlement Agreement made on

---

May 15, 1998, as construed by this Court on August 17, 1998, and as more fully set forth herein;

3.  That the Complaint and Counterclaim be **DISMISSED WITH PREJUDICE;**
4.  That there remaining nothing further to consider, this matter is **DISMISSED** from this Court's active docket.

## APPENDIX A

## SETTLEMENT AGREEMENT AND RELEASE

McDermitt, Inc. ("McDermitt"), Centex Construction Company, Inc., formerly known as Centex–Simpson Construction Company, Inc. ("Centex"), Seaboard Surety Company ("Seaboard"), St. Paul Fire and Marine Insurance Company ("St.Paul"), and National Union Fire Insurance Company of Pittsburgh, Pa. ("National") hereby enter into this Settlement Agreement and Release ("Agreement") this ___ day of ___ 1998 to settle certain disputes that have arisen in connection with McDermitt's Purchase Agreement with Centex on the National Education and Training Center—U.S. Fish & Wildlife Service ("NETC") project in Shepherdstown, West Virginia and McDermitt's Purchase Order with Centex on the New Seaboard Regional Office/State Farm Mutual Automobile Insurance Company in Frederick, Maryland ("State Farm"), as follow:

WHEREAS, McDermitt entered into a Purchase Agreement with Centex to supply materials in connection with the NETC Project; and

WHEREAS, McDermitt entered into a Purchase Order with Centex to supply materials in connection with the State Farm Project; and

WHEREAS, Seaboard, St. Paul and National Union provided a Performance Bond and a Payment Bond to the United States Fish & Wildlife Service for the NETC Project; and

WHEREAS, certain disputes between the parties have arisen resulting in the filing of a

---

**5.** *See* transcript of telephonic conference, dated May 15, 1998, at page 7.

lawsuit by McDermitt against Centex, Seaboard, St. Paul and National Union in the United States District Court for the Northern District of West Virginia, Civil Action No. 3:96–CV–54, wherein McDermitt claimed additional compensation was owed to McDermitt for its work on the NETC project; and

WHEREAS, Centex has asserted a counterclaim against McDermitt pertaining to McDermitt's performance on the NETC project and the State Farm Project; and

WHEREAS, McDermitt has counter-counterclaimed against Centex pertaining to the State Farm Project; and

WHEREAS, for purposes of setting any and all outstanding disputes and differences between the parties, arising out of or pertaining to the NETC Project and the State Farm Project, the parties have agreed to liquidate and settle all their disputes and differences on the NETC Project and State Farm Project.

NOW, THEREFORE, in consideration of the. mutual releases, covenants and agreements set forth below, the parties agree as follows:

1. *Settlement Amount:* The parties agree to a net lump sum Settlement Amount ("Settlement Amount") of TWO HUNDRED SEVENTEEN THOUSAND FIVE HUNDRED DOLLARS ($217,500) to be paid by Centex to McDermitt in full and complete settlement of any and all claims and disputes, whether asserted or unasserted that McDermitt has or may have against any other party hereto, arising out of or pertaining to the NETC Project and/or State Farm Project, and in full and complete settlement of any and all claims and disputes, whether asserted or unasserted that Centex has or may have against McDermitt, arising out of or pertaining to the NETC Project and/or State Farm Project.

2. *Release:* By execution of this Agreement, McDermitt hereby agrees, for it and for its successors or assigns, that it does hereby completely release, forever discharge and covenant not to sue or otherwise bring any legal action or claim against any of the other parties hereto, their successors or assigns for any claims, debt, or liability of any nature or form whatsoever arising out of or pertaining to the NETC Project and/or State Farm Project, including but not limited to, those occurring in breach of contract, misrepresentation, tort, or negligence, except that such release shall not be construed as releasing any right created under this Agreement itself. By execution of this Agreement, Centex hereby agrees, for itself and its successors or assigns, that it does hereby completely release, forever discharge and covenant not to sue or otherwise bring any legal action or claims against McDermitt, its successors or assigns for any claims, debt or liability of any nature whatsoever arising out or pertaining to the NETC Project and/or State Farm Project, including but not limited to, those occurring in breach of contract, misrepresentation, tort, or negligence, except that such release shall not be construed as releasing any right created under this Agreement itself. This Agreement shall not modify any construction warranties pertaining to the NETC Project and State Farm Project to the extent same exist, provided that, it is expressly understood that any warranty claims that were asserted prior to execution of this Agreement shall be released and discharged as set forth above. McDermitt further covenants that it will in no way encourage, sponsor, suggest or otherwise foster any claim or cause of action arising out of or pertaining to the NETC Project and/or State Farm Project against any party of this Agreement, or the officers, officials, employees, agents or representatives of any party to this Agreement undertaken by: (1) any officer, official, employee, agent or representative of any party to this Agreement, (2) any business or other entity in which a party to this Agreement has an interest, (3) the insurer of any party

to this Agreement or (4) any other person or entity. Centex further covenants that it will in no way encourage, sponsor, suggest or otherwise foster any claim or cause of action arising out of or pertaining to the NETC Project and/or State Farm Project against McDermitt, its officers, officials, employees, agents or representatives of any party to this Agreement undertaken by: (1) any officer, official, employee, agent or representative of any party to this Agreement, (2) any business or other entity in which a party to this Agreement has an interest, (3) the insurer of any party to this Agreement or (4) any other person or entity. Notwithstanding the foregoing, it is further understood and agreed that there may be a disputed claim of L.B. Smith, Inc. in the amount of $31,167.26 concerning the alleged rental of unspecified equipment on the NETC Project, and should any action be taken by L.B. Smith, Inc. to enforce said alleged claim against any party, the party against whom L.B. Smith, Inc. seeks to enforce the alleged claim does not waive any of its right to seek payment of the claim from another party in any legal proceeding.

3. *Denial of Liability:* It is understood and agreed that this Agreement is a compromise of disputed claims asserted by the parties, and that the payment made hereunder is not to be construed as an admission of liability on the part of any party.

4. *Dismissal:* Upon execution of this Agreement by all of the parties hereto, counsel for the parties shall prepare, execute and file in the United States District Court for the Northern District of West Virginia a Stipulation of Dismissal with prejudice of all pending claims by and between the parties in Civil Action No. 3:96–CV–54. Each party shall be responsible for and shall bear its own costs incurred in the litigation including, but not limited to, its attorney's fees.

5. *Entire Understanding:* This Agreement constitutes the entire understanding by and between and among the parties and no modification or additions shall be made except in writing by the parties hereto, and this Agreement and all other documents and acts related hereto represent valid binding and enforceable corporate actions that are authorized by law and the parties' shareholders, officers and directors.

6. *Severability:* If any portion of this Agreement is deemed unenforceable for any reason, the remaining portions shall survive and control the parties.

7. *Advice of Counsel:* The provisions of this Agreement have been reviewed by the parties and, upon advice of counsel, have been consented to freely and voluntarily.

8. *Effective Date:* This Agreement shall become effective and binding upon the parties on the date on which the last party executes the Agreement.

9. *Confidentiality:* (Deleted by the Court).

10. *Governing law:* This Agreement shall be governed by and interpreted according to the laws of the Commonwealth of Virginia.

WHEREFORE, This Agreement may be executed in counterparts, each of which shall constitute one and the same agreement, notwithstanding that all parties may not have executed the same counterpart. Each party may execute a separate signature page, which may be appended to form one or more duplicate originals of this Agreement.

McDERMITT, INC.

Dated: By: _____
Robert Mumma, President

CENTEX–SIMPSON CONSTRUCTION COMPANY, INC.

Dated: By: _____
Eric Gerner, Senior Vice President and Chief Financial Officer

SEABOARD SURETY COMPANY

Dated: By: _____
Name: _____ Title: _____

ST. PAUL FIRE AND MARINE INSURANCE COMPANY

Dated: By: _____
Name: _____ Title: _____

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

By: _____
Name: _____ Title: _____