# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2415

_____

Craig Schultz; Belen Schultz

*Plaintiffs - Appellants*

v.

Verizon Wireless Services, LLC

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Northern District of Iowa, Waterloo

_____

Submitted: May 19, 2016
Filed: August 19, 2016

_____

Before WOLLMAN, LOKEN, and BENTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Craig and Belen Schultz sued Verizon Wireless Services, LLC, ("Verizon")[1] for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the Iowa Debt Collection Practices Act, Iowa Code § 537.7103 (2014), arising out of a billing dispute. Verizon moved to compel arbitration in accordance with a

_____

[1]Its proper name is Cellco Partnership d/b/a Verizon Wireless.

Customer Agreement between Verizon and Belen Schultz, alleging that "Craig Schultz was added as an Account Manager on the account and likewise obtained service from Verizon." Plaintiffs filed a Response consenting to arbitration.

Before the court ruled on Verizon's motion to compel arbitration, the Schultzes filed a Notice of Settlement advising "that all claims pending have been resolved to the parties' satisfaction," and requesting that the court "allow (60) days within which to complete the settlement." The court entered an Order directing the parties to "file such documents as are required to terminate this action" within thirty days, a deadline the court later extended. When the parties were unable to agree on a written settlement agreement, each filed a motion to enforce its version of the settlement. The magistrate judge[2] denied the cross motions. Verizon then renewed its motion to compel arbitration. The district court[3] granted the motion, dismissed the action, and denied plaintiffs' motion to amend or correct the judgment. The Schultzes appeal these orders. We affirm.

## I. The Settlement Issue.

After the Schultzes consented to arbitration, the parties' attorneys conducted settlement negotiations by email. On October 31, Verizon's attorney wrote, "Verizon has given me authority to meet in the middle with an offer of [a specified amount]. . . . Please advise as to whether your client will accept." The Schultzes' attorney replied, "We're settled at [that amount]. Attached is a proposed release agreement for

[2]The Honorable Jon Stuart Scoles, Chief Magistrate Judge of the United States District Court for the Northern District of Iowa.

[3]The Honorable Edward J. McManus, United States District Judge for the Northern District of Iowa.

your review."[4]  Verizon's attorney then sent the Schultzes' attorney a four-page, twenty-three paragraph proposed Settlement Agreement and Release that included a mutual non-disparagement provision.  On November 12, the Schultzes' attorney returned a revised agreement that included the non-disparagement clause.  The attorneys negotiated the terms of the agreement over the following weeks but did not discuss the non-disparagement clause. On December 12, the Schultzes' attorney sent a revised agreement to Verizon and stated, "confirm that the attached is acceptable then, and we will get it executed."  The attached agreement included the non-disparagement clause.  Verizon made a change to another provision and returned the revised agreement for the Schultzes' signatures.

Counsel showed the agreement to his clients, allegedly for the first time.  The Schultzes refused to sign because of the non-disparagement clause.  Their attorney then assured Verizon that if it would make concessions regarding other provisions, the Schultzes would agree to the non-disparagement clause.  Verizon made those concessions and sent an updated agreement on December 22.  On December 30, the Schultzes' attorney notified Verizon's attorney that the Schultzes did not agree to a non-disparagement clause and tendered an amended agreement, signed by the Schultzes, without the non-disparagement clause and another provision.  Verizon refused to sign that agreement and filed a motion to enforce the December 22 Settlement Agreement and Release.  The Schultzes filed a cross motion to enforce, arguing that, if Verizon would not sign the written agreement they tendered on

---

[4]The "proposed release agreement" is not in the record on appeal, and we find no indication it was part of the district court record.  The omission may have been intentional, because the fact that the Schultzes' attorney proposed a release agreement conflicts with their argument on appeal that there was a legally enforceable settlement on October 31 because "the amount of a settlement is the *only* material term that concerns plaintiffs in these types of actions."

December 30, "then this Court should simply enforce the settlement reached between the parties on October 31, 2014."

The district court denied both motions. Applying Iowa law, the court found no mutual assent -- which is required to form a binding contract -- because "the parties were unable to agree on the issue of whether the settlement agreement would include a non-disparagement clause." On appeal, the Schultzes argue the district court erred in failing to find the parties entered into a legally binding settlement agreement on October 31, 2014, when the Schultzes accepted Verizon's offer to settle the dispute for a specified amount. Whether the parties entered into a binding settlement agreement is a question of fact we review for clear error, even if the district court's findings are based on documentary evidence. Vaughn v. Sexton, 975 F.2d 498, 506 (8th Cir. 1992), cert. denied, 507 U.S. 915 (1993). Neither party requested an evidentiary hearing, and the Schultzes do not argue the court erred in deciding this issue on the record before it. See Chaganti & Assocs., P.C. v Nowotny, 470 F.3d 1215, 1222-23 (8th Cir. 2006), cert. denied, 470 F.3d 1215 (2007).

Two threshold issues deserve brief comment. First, the posture of the litigation when the parties began settlement negotiations raises the issue whether the existence of an enforceable settlement should have been decided by an arbitrator, as the parties had agreed their dispute was arbitrable. Neither party raised this issue in the district court or on appeal. Rather, both parties submitted their settlement dispute to the court before it entered an order compelling arbitration. Parties can waive their contractual right to arbitration even if their agreement to arbitrate is valid and enforceable. See Erdman Co. v. Phoenix Land & Acq., LLC, 650 F.3d 1115, 1117 (8th Cir. 2011). The court did not err in deciding there was no binding pre-arbitration settlement.

Second, the magistrate judge ruled on cross motions to enforce a settlement agreement. In our view, those motions clearly requested "injunctive relief," and therefore the magistrate judge's ruling was subject to *de novo* review by the district

court.  See 28 U.S.C. § 636(b)(1)(A).  Rather than appeal this interlocutory ruling to the district court, the Schultzes waited until final judgment was entered and then appealed the ruling directly to this court.  The district court's only reference to the magistrate judge's ruling was its statement in the dismissal Order that "[n]egotiations did not result in a settlement, and the motion [to compel arbitration] is now ripe for decision."  In these circumstances, it is quite likely the Schultzes forfeited appeal of this issue directly to this court.  Cf. United States v. Ecker, 923 F.2d 7, 9 (1st Cir. 1991).  But as Verizon has not raised this issue, we will put it aside.

Turning to the merits, the district court properly analyzed whether the parties reached a binding settlement under basic contract law principles.  See Fees v. Mut. Fire & Auto. Ins. Co., 490 N.W.2d 55, 58 (Iowa 1992).  "One such basic principle is that a contract is not formed unless the parties mutually assent to all material terms." Sheng v. Starkey Labs., Inc., 53 F.3d 192, 194 (8th Cir. 1995).  Under Iowa law, "an agreement to agree to enter into a contract is of no effect unless all of the terms and conditions of the contract are agreed on and nothing is left to future negotiations." Crowe-Thomas Consulting Grp., Inc. v. Fresh Pak Candy Co., 494 N.W.2d 442, 444-45 (Iowa App. 1992).  "The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance."  Rucker v. Taylor, 828 N.W.2d 595, 602 (Iowa 2013) (quotation omitted).

Here, Verizon's October 31 email proposed a compromise of the settlement payment amount the attorneys had been negotiating for four days.  The email did not frame the proposed compromise as a complete settlement proposal.  The Schultzes' attorney  responded, "we're settled at [that amount]," and apparently sent Verizon a proposed form of the release that is invariably an essential component of a settlement of a plaintiff's damage claims.  See Abbott Labs. v. Alpha Therapeutic Corp., 164 F.3d 385, 388 (7th Cir. 1999) ("release provisions . . . in settlement agreements are inherently material").  Verizon then sent a lengthy proposed Settlement Agreement

and Release on November 12, making clear that the parties were not at a point where "nothing is left to future negotiations." Crowe-Thomas, 494 N.W.2d at 445; see Rucker, 828 N.W.2d at 602. For over a month, the attorneys exchanged amended versions of this agreement; the Schultzes' Arizona attorney later averred that he did not even show his clients the document being negotiated (if true, this was a deceptive tactic). As in LoRoad, LLC v. Glob. Expedition Vehicles, LLC, 787 F.3d 923, 928 (8th Cir. 2015), these "ongoing negotiations that included the exchange of multiple draft agreements" demonstrated the lack of mutual assent.

The Schultzes argue that the parties' October 31 agreement on an amount Verizon would pay was a binding settlement because leaving only "insubstantial matters for later negotiation . . . does not vitiate the validity of the agreement reached." Worthy v. McKesson Corp., 756 F.2d 1370, 1373 (8th Cir. 1985) (quotation omitted), quoting Trnka v. Elanco Prods. Co., 709 F.2d 1223, 1226 n.2 (8th Cir. 1983). The principle is sound, but it does not apply to the undisputed facts in this case. The form of the release and dismissal order is a material part of any settlement. Verizon considered the inclusion of a mutual non-disparagement clause to be an essential part of the release. Negotiations broke down when the Schultzes refused to agree to that term, conclusively establishing that it *was* a substantial matter. In these circumstances, the district court did not clearly err in finding no enforceable settlement.

## II. The Arbitration Issue.

After the cross motions were denied, Verizon renewed its motion to dismiss and to compel the arbitration to which the Schultzes had previously agreed. The Schultzes opposed this motion, attributing prior agreement to a "miscommunication between Plaintiffs and their counsel." Judge McManus granted the motion to compel and dismissed the action, finding that "Plaintiffs consented to the arbitration by agreeing to the overall contract." Craig Schultz then filed a motion to amend or

correct the judgment, arguing for the first time that he was not a party to the Customer Agreement between Verizon and Belen Schultz and never consented to arbitration. Judge McManus denied the motion, concluding that "Plaintiffs agreed to arbitration both in their pleadings in this case and by accepting the contract containing the arbitration clause, which [they] did by, among others actions, activating service thereunder."

On appeal, the Schultzes argue the district court erred in compelling Craig Schultz to arbitrate because there is no evidence "establishing that Mr. Schultz agreed to any contract with Verizon whatsoever, let alone an arbitration clause." The district court had jurisdiction to decide this issue because the Verizon contract did not provide that an arbitrator must decide arbitrability. See Liberty Mut. Ins. Co. v. Mandaree Pub. Sch. Dist. #36, 503 F.3d 709, 713 (8th Cir. 2007). We review the district court's decision to compel arbitration of Craig Schultz's underlying claim *de novo*, reviewing factual findings for clear error. Pro Tech Indus., Inc. v. URS Corp., 377 F.3d 868, 870-71 (8th Cir. 2004) (standard of review).

We agree with the district court that Craig Schultz agreed to arbitration when the Schultzes stated in an October 25, 2014, pleading: "Plaintiffs consent to this matter being sent to arbitration." In addition, the court did not clearly err in finding that Craig Schultz, as an "Account Manager" who used one of the phone lines to which the Customer Agreement applied, had activated phone service and thus accepted the Verizon contract, including an agreement to arbitrate this billing dispute.

The judgment of the district court dated April 23, 2015, and the order denying plaintiffs' motion to amend or correct the judgment dated May 29, 2015, are affirmed.

_____