# United States Court of Appeals
## For the Eighth Circuit
_____

No. 24-2095
_____

William R. Schlecht

*Plaintiff - Appellant*

v.

Stanley Goldman; Northwestern Mutual Life Insurance Company

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: September 16, 2025
Filed: November 4, 2025
_____

Before LOKEN, KELLY, and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

William R. Schlecht appeals from the district court's[1] order dismissing his action against Northwestern Mutual Life Insurance ("Northwestern Mutual") and its

_____

[1]The Honorable Stephen R. Bough, United States District Judge for the Western District of Missouri.

agent, Stanley Goldman, and the court's denial of his motion for rehearing. We affirm.

## I.     BACKGROUND

William Schlecht, an attorney with more than 20 years' experience, sued Northwestern Mutual and Goldman after his Term-65 life insurance policy with extended protection and $250,000 death benefit lapsed in 2015. The policy lapsed because Schlecht missed a payment. Schlecht contends he cured the deficiency when he called Goldman, paid the delinquent premium, submitted his medical history, and received confirmation of the policy's reinstatement. Northwestern Mutual subsequently refunded Schlecht's payment for reinstatement.

In 2023, Schlecht commenced an action in state court alleging breach of contract and various other state law claims. Schlecht alleged Northwestern Mutual told him the policy had been reinstated and a couple months later, without a permissible reason, Northwestern Mutual refunded Schlecht's premium payment and rescinded its prior decision to reinstate the policy. Northwestern Mutual denied it ever reinstated the policy and asserted the policy expired by its own terms when the paid-up additions to the policy were exhausted in 2022.

Following Northwestern Mutual's removal to federal court, the parties reached a resolution in mediation and signed a "Settlement Term Sheet Memorandum" ("settlement memorandum") listing five "essential/material terms." These terms included: (1) Northwestern Mutual's agreement to pay Schlecht a total sum of $10,000; (2) Schlecht's willingness to sign a release of all claims, known or unknown, with the understanding that Northwestern Mutual had agreed to resolve disputed claims without admission of liability; (3) a provision obligating the terms of the settlement agreement to be kept confidential to the extent allowed under Missouri law; (4) Schlecht's agreement not to disparage Northwestern Mutual or Goldman; and (5) after receipt of the payment, the parties would effectuate dismissal of the case with prejudice and without an award of costs or attorney fees. The

specific phrasing of the terms was "to be in accordance with standard contractual language" to be prepared by one of Northwestern Mutual's attorneys.

Once the parties signed the settlement memorandum, the mediator notified the court that the case had settled. Three days later, on March 8, 2024, Schlecht received a draft settlement agreement for his review and signature. He refused to sign the agreement because he believed it contained terms that the parties had not agreed to during mediation. One of those terms was a provision that stated the parties "have conducted an independent investigation of the facts and do not rely upon any statement or representation of the other party or representatives of the other party in entering into the Agreement, other than as expressly provided for in the Agreement." (referred to as "the non-reliance clause" in this litigation). Schlecht also began inquiring about reinstatement of the policy and the applicable death benefit. More specifically, he asked Northwestern Mutual's counsel several questions in an email: "Most importantly: Has NML treated the Policy as fully enforceable after the disputed lapse raised eight years ago and as you now represent? If so, what is the current status of both components of the Policy? The event of my death, does either component of the Policy apply?"

Unable to come to a resolution, Schlecht moved to vacate the settlement memorandum and take additional depositions. Northwestern Mutual and Goldman moved to enforce the settlement. The district court scheduled an evidentiary hearing, but Schlecht failed to appear. The court granted Northwestern Mutual's and Goldman's motions to enforce settlement and denied Schlecht's motions to vacate the settlement and take additional depositions. Schlecht filed a motion for rehearing, which was denied.

Schlecht appeals, contending the district court's enforcement of the draft settlement agreement was in error for two reasons: (1) inclusion of the non-reliance clause is an essential settlement term under Missouri law, and Schlecht's refusal to agree to that provision meant there was no settlement agreement at all; and (2) to the extent the parties reached a settlement, the terms should be those included on the

settlement memorandum, not Northwestern Mutual's subsequent draft agreement. Schlecht further contends that the district court abused its discretion when it refused to hold a new evidentiary hearing after Schlecht missed the hearing for a serious medical reason.

## II.    DISCUSSION

### 1.    Material Settlement Terms and Settlement Enforceability

The parties agree that Missouri law governs this dispute. Under Missouri law, a party asking to enforce a settlement agreement bears the burden of proving "by clear, convincing and satisfactory evidence" that it is entitled to relief. Stickler v. McGinnis, 649 S.W.3d 38, 43 (Mo. Ct. App. 2022) (citation omitted). "Evidence is clear and convincing if it instantly tilts the scales in the affirmative when weighed against the evidence in opposition, such that the fact finder's mind is left with an abiding conviction that the evidence is true." Id. at 44 (cleaned up). Because enforcement of a settlement agreement is an equitable remedy of specific performance, the trial court is "afforded much discretion" when deciding whether to compel settlement. Id.

"The question of whether the parties entered into an enforceable settlement agreement is governed by contract law." Jameson v. Still, 643 S.W.3d 306, 309 (Mo. 2022) (en banc). To establish an enforceable settlement agreement, Northwestern Mutual must prove the essential elements for a contract: offer, acceptance, and bargained for consideration. Id. Consideration may be either "a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." Morrow v. Hallmark Cards, Inc., 273 S.W.3d 15, 25 (Mo. Ct. App. 2008)).

We review a district court's factual findings under the clearly erroneous standard and its interpretation of a settlement agreement *de novo*. Little Rock Sch. Dist. v. North Little Rock Sch. Dist., 109 F.3d 514, 516 (8th Cir. 1997). "Whether

-4-

the parties entered into a binding settlement agreement is a question of fact we review for clear error." Schultz v. Verizon Wireless Services, LLC, 833 F.3d 975, 978 (8th Cir. 2016). "The essential elements of a valid settlement agreement are the involvement of parties who are competent to contract, a proper subject matter, legal consideration, mutuality of obligation, and mutuality of agreement." Chaganti & Associates, P.C. v. Nowotny, 470 F.3d 1215, 1221 (8th Cir. 2006).

Here, the district court found that Northwestern Mutual's offer to pay $10,000 in exchange for Schlecht's willingness to settle the lawsuit was sufficient consideration to form a valid contract. "A valid settlement agreement also requires 'a meeting of the minds and mutual assent to the essential terms of the agreement.'" Youngs v. Conley, 505 S.W.3d 305, 313 (Mo. Ct. App. 2016) (quoting Reppy v. Winters, 351 S.W.3d 717, 720 (Mo. Ct. App. 2011)). A meeting of the minds occurs if there is a "definite offer," an unequivocal acceptance, and a mutual agreement on the "same thing in the same sense at the same time." Stickler, 649 S.W.3d at 43. Schlecht contends no valid settlement agreement was reached because he accepted the terms set forth in the settlement memorandum and when Northwestern Mutual subsequently added the non-reliance clause into the final settlement agreement, there was no longer a meeting of the minds. Schlecht claimed in a letter he wrote to Northwestern Mutual after the mediation that his "long-held belief of the facts was turned on its head Tuesday" at mediation, asserting "I had life insurance after all. I just didn't know it." He further asserted: "I also learned Tuesday that I no longer have the life insurance. I didn't know that either." Schlecht recounted that his $1.5 million settlement offer made at the beginning of the day ended in a $10,000 settlement at the end of that day based on what he believed was Northwestern Mutual's decision to rescind reinstatement of the policy eight years prior. Schlecht then proposed alternative settlement options, which Northwestern Mutual declined to consider.

Evidence in the record shows Schlecht knew that he had agreed to settle the case at mediation for the sum of $10,000 on a policy that he knew had a death benefit of $250,000 and that he believed also accrued dividends and cash flow.

-5-

Subsequently, Schlecht became unhappy with the settlement terms he had reached, contesting that there was a meeting of the minds. Resolution of Schlecht's claim depends on whether, under Missouri law, the disputed non-reliance clause is an essential/material term that the parties had to be agreed on for there to be a meeting of the minds, as Schlecht contends, or, as Northwestern Mutual contends, whether that clause is a standard contractual term which is neither essential nor a basis to undo the settlement reached at mediation. The district court found the settlement memorandum demonstrated there was a meeting of the minds and the parties' agreement was "final enough" for an experienced mediator to inform the court that the matter had settled, with no indication that any material term remained unresolved. The district court further found that only after signing the settlement memorandum did Schlecht take "issue with the standard contractual term." The court declined to allow Schlecht to rescind the settlement reached at mediation "because there is clear and convincing evidence that both parties agreed to the settlement."

A determination of which contractual terms are "essential depends on the agreement and its context and also on the subsequent conduct of the parties, including the dispute which arises and the remedy sought." Shellabarger v. Shellabarger, 317 S.W.3d 77, 82 (Mo. Ct. App. 2010). The settlement memorandum listed five terms that the parties mutually characterized as the "essential/material terms." Notably, Schlecht, although an experienced attorney, did not include any provision regarding the continued enforceability of his life insurance policy or its benefits in the settlement memorandum. The documents in the record establish that the first time Schlecht raised an issue or questioned the policy's continued enforceability and applicable benefits was after he received and reviewed the draft settlement agreement—days after he had unambiguously accepted Northwestern Mutual's offer to settle all claims for $10,000.

To undo the settlement, Schlecht argues Northwestern Mutual added a material term in the draft settlement agreement that was not agreed to at mediation.

Schlecht, however, has not persuaded us that the non-reliance clause either adds a material term to the settlement or alters a material term contained in the settlement memorandum. This clause restated concepts that were already in essence part of the settlement memorandum. The non-reliance clause provided that each party had an opportunity to conduct an independent investigation of the facts, and no party was relying on the other party's statements or representations when deciding whether to sign the agreement. This clause is consistent with the settlement memorandum which memorialized Schlecht's awareness of his right to obtain the advice of his own counsel and his choice to decline to exercise that choice and instead proceed as a self-represented litigant. In addition, the parties expressly acknowledged in the settlement memorandum that the meaning of any items in the memorandum was the sole responsibility of the parties. By signing the settlement memorandum, each party agreed that they were acting "voluntarily, of their own free will, and [] under no duress when signing." The parties further recognized that by signing the memorandum "they may adversely alter their legal rights in court, and, by signing this Memorandum, they are waiving all trials and appeals, except for judicial enforcement of this Memorandum."

The settlement memorandum made plain that the final settlement documents would contain phrasing consistent with "standard contractual language." Although an experienced attorney, Schlecht did not defer accepting Northwestern Mutual's settlement offer until he had an opportunity to review "the specific final phrasing of the terms" that were forthcoming. Nor did Schlecht ask for an opportunity to consult with his own counsel or verify any information or representation that had been made by Northwestern Mutual either prior to mediation or during mediation. Instead, Schlecht unambiguously agreed to settle the case. He did so with the understanding that he was "completely releas[ing] and forever discharg[ing]" Northwestern Mutual (and all past, present, and future officers, principals, policy owners, etc.)

> from any and all rights, claims, demands, debts, contracts, accounts, torts, misfeasance, malfeasance, costs, losses, expenses, obligations, causes of action, damages and liability of any kind or character whatsoever, whether known or unknown, matured or unmatured,

asserted or unasserted, and whether legal, equitable, or statutory in nature, that [Schlecht] ha[d] or may have had against [Northwestern Mutual or Goldman] as of the date of the settlement agreement, including without limitation any claim that was asserted, could have been asserted, or was in any way related to the Case No. 23-645-SRB and Policy No. 920799, understanding that resolution is for disputed claims and without admission of liability.

The phrasing of the non-reliance clause did not add or alter any settlement term or provision in the settlement memorandum, let alone a material term. Because the settlement agreement is consistent with the terms and provisions set forth in the settlement memorandum, Schlecht's alternative request to enforce the settlement memorandum but not the settlement agreement is unavailing. Under these circumstances, we find no error, clear or otherwise, in the district court's finding that the non-reliance clause drafted by Northwestern Mutual was standard contractual release language. Further, Schlecht has not shown by clear, convincing, and satisfactory evidence that he is entitled to relief from his agreement to settle. We affirm the district court's decision to enforce the settlement.

2.    <u>Evidentiary Hearing</u>

Schlecht also argues the district court abused its discretion when it denied his motion for a rehearing. Schlecht failed to attend the scheduled hearing, initially telling the district court clerk that he had car trouble and subsequently claiming he had experienced a medical episode. Schlecht now asserts that his phone call to the clerk was a motion to continue, and he "appeals both the denial of the continuance and the refusal to hold a new hearing."

A party is not automatically entitled to an evidentiary hearing on a motion relating to a settlement agreement. <u>Stewart v. M.D.F., Inc.</u>, 83 F.3d 247, 251 (8th Cir. 1996). This Court has noted the district court's "considerable discretion" when deciding a motion to compel settlement, suggesting a hearing is warranted "only if

-8-

there are substantial questions of fact that are not already a matter of record." <u>Barry v. Barry</u>, 172 F.3d 1011, 1013 (8th Cir. 1999); <u>see also</u> <u>Stewart</u>, 83 F.3d at 251.

Schlecht has not demonstrated the existence of any factual dispute, which would require the presentation of evidence for resolution. Instead, the factual record was developed and included exhibits Schlecht submitted. The district court stated it had thoroughly reviewed all the exhibits before making its decision. Schlecht has not explained how a new hearing could change the outcome. And "[t]he judicial policy favoring settlement rests on the opportunity to conserve judicial resources, not expend them further." <u>Stewart</u>, 83 F.3d at 252 (citation omitted). On this record, the district court did not abuse its discretion by refusing to continue the matter when Schlecht did not appear at the scheduled hearing or by declining to hold a second hearing before issuing a decision on whether to enforce the parties' settlement.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____